**EADS TRANSFER, INC., Petitioner–Cross–Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent–Cross–Petitioner.**

**Nos. 91–70583, 91–70664.**

United States Court of Appeals, Ninth Circuit.

Submitted March 4, 1993 *.

Decided April 5, 1993.

---

* The panel unanimously agrees that this case is appropriate for submission without oral argument. Fed.R.App.P. 34(a), 9th Cir. R.34–4.

Gary M. Carlson, Portland, OR, for petitioner-cross-respondent.

Aileen A. Armstrong, N.L.R.B., Washington, DC, for respondent-cross-appellant.

Before: TANG, POOLE, and RYMER, Circuit Judges.

TANG, Circuit Judge:

Eads Transfer, Inc. ("Eads") petitions for review of a decision and order issued by the National Labor Relations Board ("Board"), and the Board cross-petitions for enforcement of its order issued on August 27, 1991 and reported at 304 N.L.R.B. No. 90. The Board ruled that Eads violated § 8(a)(1) and (3) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1) and (3) by failing to inform employees of a lockout and refusing to reinstate seven striking employees who offered to return to work unconditionally. Eads argues that the Board erred because there were substantial and legitimate business reasons for not reinstating the striking workers and there was no evidence of antiunion motivation. We have jurisdiction under 29 U.S.C. § 160(e) and (f). We deny the petition for review and enforce the Board's order.

## BACKGROUND

Eads is a moving and storage company located in Olympia, Washington. Since at least 1973, the exclusive bargaining representative of Eads' drivers, packers, and warehousemen has been the General Teamsters, Chauffeurs, and Helpers Union Local 378, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO ("Union").

The parties' last collective bargaining agreement expired on March 30, 1985, but the terms of the agreement however were extended during negotiations for a new contract. On July 30, 1987, the contract extension expired, and the Union called for an economic strike. Picketing began at Eads' "base of operations" and at various pick-up and delivery sites. Eads' seven regular employees went on strike, while three on-call employees did not honor the picket line and continued to work on an on-call basis. Eads hired temporary replacements for its seven striking employees.

During the first ten months of the strike, the parties continued to negotiate.[1] Because the Union believed it would not be able to extend its Board certification as the exclusive bargaining representative if the strike lasted for more than a year, it formulated a strategy to preserve its status as the bargaining representative and to enhance its strength at the bargaining table. Under this strategy, a decertification petition would be filed before the strike reached the one year mark.[2] To forestall the chance that Eads might hire permanent replacement workers and dilute the Union's voting strength to obtain a decertification election, the Union decided that a significant number of strikers should return to work.

---

1. The Union, during this time, filed several unfair labor practices charges against Eads, many of which alleged bad faith by Eads at the bargaining table. Most of the charges were dismissed by the NLRB's Regional Director, but three of the charges became the basis of a consolidated complaint. The consolidated complaint was later dismissed as part of a settlement agreement reached between the Regional Director and Eads, and on August 11, the Director found that Eads had complied with all of the settlement terms.

2. The Union apparently figured that if the decertification petition was successful and a new Board certification was obtained, then the Union would continue to be the exclusive bargaining representative for another twelve months after the new certification.

On June 2, 1988, Owen Linch, the Union's business agent, and five of the seven strikers met with Eads. After Eads confirmed that the replacement workers were temporary, four of the five strikers present submitted identical, signed return-to-work offers. Eads' president, Marc Conrad, read at least one of the letters before setting them aside without comment, and the meeting ended. A striker who signed a return-to-work offer then filed the decertification petition and a hearing was held on June 21, 1988.[3]

On July 20, 1988, the three remaining strikers who had not yet requested reinstatement submitted identical return-to-work offers to Lawrence Tenney, Eads' General Manager. No comment was made, and Tenney shortly thereafter read the letters.

On August 8, 1988, the Union filed a labor violation complaint against Eads for refusing to reinstate the seven strikers who requested to return to work unconditionally.

On August 23, the parties met for the first time since June 2 because the Union cancelled three negotiating sessions scheduled sometime between June 2 and August 23. At this August 23 meeting, Eads informed the Union, for the first time, that the strikers would not be reinstated until a contract was reached.

The Administrative Law Judge ("ALJ") found that Eads did not violate § 8(a)(1) and (3) [4] by refusing to reinstate the seven strikers. The Board disagreed. It found that Eads did violate § 8(a)(1) and (3), and Eads was therefore ordered to cease and desist from refusing to reinstate without justification the seven striking employees who offered to return to work unconditionally. Eads petitions for review of the

Board's decision and order, and the Board cross-petitions for enforcement of its order.

## STANDARDS OF REVIEW

We will uphold a "Board rule as long as it is rational and consistent with the Act." *NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 787, 110 S.Ct. 1542, 1549, 108 L.Ed.2d 801 (1990) (citation omitted). We will also uphold "a decision of the NLRB if its factual findings are supported by substantial evidence and if it has correctly applied the law." *SKS Die Casting & Machining, Inc. v. NLRB*, 941 F.2d 984, 988 (9th Cir.1991) (quotation omitted). "A reviewing court may not 'displace the [NLRB]'s choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo.*'" *Id.* (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 71 S.Ct. 456, 464, 95 L.Ed. 456 (1951)). Board rules are given considerable deference. *Curtin Matheson*, 494 U.S. at 786, 110 S.Ct. at 1549 (citations omitted).

## DISCUSSION

### I.

An employer commits an unfair labor practice by refusing to reinstate strikers, unless the employer can show that its refusal was due to "legitimate and substantial business justifications." *NLRB v. Fleetwood Trailer Co.*, 389 U.S. 375, 378, 88 S.Ct. 543, 546, 19 L.Ed.2d 614 (1967) (quotation omitted). The employer has the burden of showing such a legitimate justification. *Id.*

Because Eads stipulated that it would have reinstated the striking workers who unconditionally offered to return to work

---

**3.** At the decertification hearing, Eads contended that the petition was a "sham" because a majority of the employees still supported the Union and that the petition was part of the Union's overall bargaining strategy. The hearing proceeded, and an election was conducted at a later date.

**4.** Under § 8(a)(1) and (3) of the NLRA, 29 U.S.C. § 158(a)(1), (3):

It shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce employees in the exercise of rights guaranteed in section 157 of this title;
. . .
(3) by discrimination in regard to hire or tenure of employment or any term or condition of employment to encourage or discourage membership in any labor organization. . . .

had there been a new contract, Eads' only legitimate business justification for refusing to reinstate the strikers was Eads' desire to put economic pressure on the Union to enter into a bargaining agreement favorable to Eads by locking out the strikers.[5]

In *Harter Equipment, Inc.*, 280 N.L.R.B. 597 (1986), *petition for review denied sub nom. Local 825, Int'l Union v. NLRB*, 829 F.2d 458 (3rd Cir.1987), the Board held that "using temporary employees after a lawful lockout in order to bring economic pressure to bear in support of legitimate bargaining demands (1) is a measure reasonably adapted to the achievement of a legitimate employer interest and (2) has only a comparatively slight adverse effect on protected employee rights." *Id.* at 600. The Board further held:

> [A]n employer does not violate Section 8(a)(3) and (1), absent specific proof of antiunion motivation, by using temporary employees to engage in business operations during an otherwise *lawful lockout,* including a lockout initiated for the sole purpose of bringing economic pressure to bear in support of a legitimate bargaining position.

*Id.* (emphasis added) (footnote omitted).

Although an employer's lockout of striking employees is a legitimate business justification under *Harter*, the Board in the present case held that in order for an employer to invoke the rule stated in *Harter*, the employer must "declare the lockout before or in immediate response to the strikers' unconditional offers to return to work." Thus, the Board concluded that:

> [A]n employer can only justify its failure to reinstate economic strikers "for legitimate and substantial business reasons" based on a "lockout" by its timely announcement to the strikers that it is locking them out in support of its bargaining

position. For only after the employer has informed the strikers of the lockout can the strikers knowingly reevaluate their position and decide whether to accept the employer's terms and end the strike or to take other appropriate action.

■ Here, unlike in *Harter*, the strikers were not given notice of a lockout before or immediately after they offered to return to work unconditionally. Instead, Eads informed the strikers of the lockout only after approximately two and a half months had elapsed since the first return-to-work offers were submitted, and after the Union filed unfair labor practice charges against Eads for refusing to reinstate the strikers.[6]

According to Eads, it did not immediately notify the employees of the lockout because the Union had cancelled several negotiating sessions between June 2 and August 23. Therefore, Eads' first opportunity to verbally tell the Union of the lockout was at the August 23rd meeting.

The Board found that this explanation "retains a certain lameness" because it did not "explain or justify [Eads'] protracted silence regarding the strikers' offers to return to work." The Board also noted that Eads "could have informed the Union at any time of its decision to lock out its employees and that such an announcement was not contingent on the holding of a bargaining session or any other condition."

Under the circumstances, the Board's ruling that Eads did not have a legitimate business reason for its silent lockout and refusal to reinstate the striking employees is not unreasonable nor contrary to the NLRA. *See Fleetwood Trailer Co.*, 389 U.S. at 378, 88 S.Ct. at 546 ("It is the primary responsibility of the Board and not of the courts 'to strike the proper balance between the asserted business justifica-

---

5. Although Eads argues that it did not reinstate the strikers because of concerns over picket line misconduct, sabotage, work slowdowns, and sham offers to return to work, these concerns were put aside by the parties' stipulation that the workers would have been reinstated had there been a contract. Thus, these concerns are not legitimate and we do not address them on appeal.

6. In a hearing before the ALJ, the following exchange took place:

> Judge: the fact that you may not have declared formally a lockout until the date referred to, I think the 23rd of August, you would contend that you occupied the status of an employer locking out employees even earlier than that.
> Attorney for Eads: Right, on June 2nd.

---

**377**

tions and the invasion of employee rights in light of the Act and its policy.' ").

## II.

Eads also argues that the Board erred by failing to specifically find that Eads' conduct was antiunion motivated. Although the Board did not make a finding of antiunion motivation or union animus, the Supreme Court has held that no such finding is required if the employer's conduct is "inherently destructive of employee interests." *NLRB v. Great Dane Trailers, Inc.*, 388 U.S. 26, 33, 87 S.Ct. 1792, 1797, 18 L.Ed.2d 1027 (1967).

Eads contends that its silence regarding the lockout of the striking employees is not inherently destructive of employee rights. The Board disagreed, holding that:

> In the absence of notification, we conclude that an employer's failure to reinstate economic strikers based on a claimed lockout on their unconditional offer to return to work is *inherently destructive* of employee rights under *Laidlaw* and is a violation of Section 8(a)(3) and (1) of the Act.

In *Laidlaw Corp.*, 171 N.L.R.B. 1366 (1968), *order enforced*, 414 F.2d 99 (7th Cir.1969), *cert. denied*, 397 U.S. 920, 90 S.Ct. 928, 25 L.Ed.2d 100 (1970), the Board held that the employer's conduct regarding return-to-work offers by strikers was inherently destructive of employee rights. *Id.* at 1369. There, the employees rejected the employer's wage increase proposal and voted to go on strike. The employer replaced the striking employees with permanent workers. When strikers submitted unconditional offers to return to work, the employer notified them that they were not entitled to reinstatement because they had been replaced by permanent workers. The employer would then only reinstate strikers who submitted offers to return to work on the days that vacancies existed. If no striker submitted an offer to return to work on a day which a vacancy opened, no striker was reinstated, and the employer would hire a new permanent worker. The employer did not give any business justification for such conduct, and the Board found that "such conduct was inherently destructive of employee rights." *Id.* (footnote omitted).

Here, as in *Laidlaw*, striking employees submitted return-to-work offers. Although the strikers were not permanently replaced as in *Laidlaw*, Eads nevertheless refused to reinstate the strikers because of a silent lockout. The Board held that Eads' silent lockout was inherently destructive of employee rights, and therefore, no specific finding of antiunion motivation was required to hold that Eads violated § 8(a)(1) and (3).

Under the particular facts of this case, the Board's ruling is rational and consistent with the NLRA. Here, the strikers were not given prompt notice of the lockout. Eads waited over two and a half months after it received unconditional offers to return to work before notifying the strikers of the lockout. Without notice of the lockout, the strikers did not know what was at risk. Had the employees been timely informed of the lockout they could have reevaluated their positions and taken appropriate actions in reaching a new bargaining agreement.

Eads' petition for review is **DENIED** and the Board's order is **ENFORCED**.