James L. WASHBURN and Kay A. Washburn, d/b/a Washburn Brothers, a Colorado partnership; and Roy V. Dyer, Plaintiffs–Appellants,

v.

The Ronald W. THOMAS and Raymond Wayne Thomas Charitable Remainder Annuity Trust, a trust; Sharon I. Bennett; Kent Allen; Thomas L. Williams and Dean C. Williams, d/b/a Williams & Williams Realtors; Williams & Williams Marketing Services, Inc.; Heartland Community Foundation; Ronald W. Thomas; and Raymond W. Thomas, Defendants–Appellees.

No. 00CA0616.

Colorado Court of Appeals, Div. V.

June 7, 2001.

Certiorari Denied Jan. 14, 2002.

Robert C. Burroughs, Ault, CO, for Plaintiffs–Appellants.

Rothgerber, Johnson & Lyons, LLP, Justin D. Cumming, Scott M. Browning, Denver, CO, for Defendants–Appellees The Ronald W. Thomas and Raymond Wayne Thomas Charitable Remainder Annuity Trust, Ronald W. Thomas, and Raymond W. Thomas.

Hasler, Fonfara & Maxwell, LLP, Timothy L. Goddard, Fort Collins, CO, for Defendants–Appellees Sharon I. Bennett, Kent Allen, and Heartland Community Foundation.

White & Steele, P.C., John M. Palmeri, Denver, CO, for Defendants–Appellees Thomas L. Williams and Dean C. Williams, d/b/a Williams & Williams Realtors; and Williams & Williams Marketing Services, Inc.

Opinion by Judge TAUBMAN.

In this dispute over the purchase of real property through an auction, plaintiffs, James L. Washburn and Kay A. Washburn, d/b/a Washburn Brothers, and Roy V. Dyer, appeal the summary judgment entered in favor of defendants, The Ronald W. Thomas and Raymond Wayne Thomas Charitable Remainder Annuity Trust; Ronald W. Thomas; Raymond W. Thomas; Thomas L. Williams and Dean C. Williams, d/b/a Williams & Williams Realtors; Williams & Williams Marketing Service, Inc.; Sharon I. Bennett, Kent Allen, and Heartland Community Foundation. We affirm.

At an auction of real property in Weld County, Colorado, plaintiffs were the high bidders, but they did not obtain a deed to the land on which they bid because one of the sellers refused to proceed with the transaction. Defendants owned and/or marketed the property. Plaintiffs then brought this action against defendants and others, seeking damages and specific performance in the form of conveyance of the property on which they were the high bidders.

Defendants filed a motion for summary judgment, arguing that plaintiffs were not entitled to specific performance. Along with that motion, defendants submitted materials indicating that, prior to the auction, plaintiffs were informed that any successful bidder was required to execute a written sales contract, that such contract limited plaintiffs' remedies in the event of the sellers' default to a return of their earnest money deposit, and that all plaintiffs had signed such contracts. The trial court granted defendants' motion and entered a judgment (1) dismissing plaintiffs' claims for specific performance and consequential damages, and (2) determining that defendants breached the sales contract, but, that by the terms of the contract, plaintiffs' only remedy was return of their earnest money. The trial court later certified its judgment as final pursuant to C.R.C.P. 54(b), and this appeal followed.

## I. Remedy Under Written Sales Contract

Plaintiffs contend that the trial court erred in determining, as a matter of law, that their remedy was limited by the terms of the

written sales contract. Plaintiffs thus argue that the auction was "absolute" and the sellers were required to convey the property. We perceive no error.

■ Initially, we note that summary judgment is warranted only upon a clear showing that no genuine issue as to any material fact exists and that the moving party is entitled to judgment as a matter of law. *See* C.R.C.P. 56; *Greenwood Trust Co. v. Conley*, 938 P.2d 1141, 1149 (Colo.1997). The moving party has the initial burden to show that there is no genuine issue of material fact. *See id.* Once the moving party has met its initial burden, the burden shifts to the nonmoving party to establish that there is a triable issue of fact. *AviComm, Inc. v. Colorado Pub. Utils. Comm'n*, 955 P.2d 1023, 1029 (Colo. 1998). Our review of an order granting a motion for summary judgment is *de novo. Vail/Arrowhead, Inc. v. Dist. Court*, 954 P.2d 608, 611 (Colo.1998).

■ Two methods to sell property at auction exist. When an auction is "without reserve" or "absolute," a seller makes an offer to sell when the seller advertises the sale and it is up to the bidder to accept. The seller is the offeror and the bidder is the offeree. A contract is formed with each bid, and the seller may not withdraw the property once any legitimate bid has been submitted, but is absolutely committed to the sale once the bid has been entered. *Pitchfork Ranch Co. v. Bar TL*, 615 P.2d 541, 548–49 (Wyo.1980).

■ In contrast, when an auction is "with reserve" or "conditional," the auctioneer seeks offers from bidders. In such case, the bidder is the offeror, while the auctioneer, as agent for the seller, is the offeree. In this situation, the auctioneer as offeree is authorized to accept the bid, reject the bid, or withdraw the article from sale until acceptance of a bid. A seller may exercise the right to reject a bid even after the auctioneer has accepted the bid. *Id.* at 547–48.

■ Even though an auction is advertised as "absolute," it may actually be conditional if other material that is provided to prospective bidders informs them that it is subject to certain conditions. *See Dry Creek Cattle Co.*

*v. Harriet Bros. Ltd. P'ship*, 908 P.2d 399, 402 (Wyo.1995).

■ The owner of property offered for sale at an auction has the right to prescribe the manner, conditions, and terms of the sale. *United States v. Blair*, 193 F.2d 557, 560 (10th Cir.1952); *Love v. Basque Cartel*, 873 F.Supp. 563, 570 (D.Wyo.1995), *aff'd mem.*, 95 F.3d 1161, 1996 WL 480169 (10th Cir.1996); *see generally* 7A C.J.S. *Auctions & Auctioneers* § 9(a) (1980). Furthermore, the terms and conditions of a public sale announced prior to the sale are binding upon a buyer regardless of whether the buyer knew of them or understood them. *See United States v. Blair*, 193 F.2d at 560; *see also* Restatement (Second) of Contracts § 28 comment e (1979); 7A C.J.S. *Auctions & Auctioneers, supra*, § 9(b); 7 Am.Jur.2d *Auctions & Auctioneers* § 14 (1980). Unless a contrary intention is manifested, bids at an auction embody terms made known by advertisement, posting, or other publication of which bidders are or should be aware, as modified by any announcement made by the auctioneer when the goods are put up for sale. Restatement (Second) of Contracts, *supra*, § 28(2); *see Lawrence Paper Co. v. Rosen & Co.*, 939 F.2d 376, 379 (6th Cir. 1991).

Here, in support of their summary judgment motion, defendants presented evidence of three methods by which prospective bidders were advised that this auction was not in fact absolute. Those three indicators of a conditional sale were bid cards, an auction brochure, and an announcement by the auctioneer before bidding that each successful bidder would be required to sign and abide by the terms of the written sales contract.

First, prospective bidders were required to read and sign the bid cards in order to participate in the auction. The cards described the "Terms and Conditions of Sale" and provided that the act of registering and executing a card "shall be final and exclusive proof that the bidder has made him/her self [sic] acquainted with these terms/conditions of sale and has agreed to be bound by them." The bid cards further provided, in bold-faced print, as follows:

468

For real property, the complete and final terms and conditions of sale are further set forth in the "Contract of Sale" and its attachments which by reference is [sic] incorporated herein and which bidder hereby acknowledges having read and agreed to in its entirety prior to bidding. Real property bidders also acknowledge having received and read prior to sale the auction brochure. . . .

Second, the auction brochure provided, in relevant part, as follows:

Notice: The Contract of Sale, Bid Card, and Seller's Disclosure Statement are available prior to the auction. . . . The act of bidding . . . shall act as a representation and warranty . . . that the [b]idder received and read prior to bidding, and agrees to be bound by, the terms and conditions of sale and other information as set forth in the . . . Contract of Sale and its attachments . . . and the Bid Card, all which by reference to are incorporated herein.

Third, an affidavit from the auctioneer stated that at the beginning of the auction, "prospective bidders were advised that a successful bidder would be required to sign a Contract of Sale of Real Estate."

Finally, defendants also attached the written sales contracts executed by plaintiffs after the bidding process. Those contracts provided that if the seller breached the contract or failed to perform any of its obligations under the contract, "the buyer may, as its sole and exclusive remedy, terminate [the] contract by notifying the seller thereof, at which time the earnest money shall be returned to buyer." The contracts further provided that "[i]n no event shall Seller or Broker be liable to Buyer for actual, punitive, speculative, or consequential damages, nor shall Buyer be entitled to bring a claim to enforce specific performance of this [c]ontract."

In their response to the summary judgment motion, plaintiffs argued that they should not be bound by the terms of the written sales contract because that contract was "superfluous." They further argued that the auction was advertised as "absolute" and

the contract was formed upon the acceptance of their bid.

However, while the auction advertisement did use the term "absolute," usage of this term was not dispositive. The advertisement also referenced the sales brochure that provided notice of the conditions. Furthermore, any purported reliance on the advertisement must fail in light of the conditions clearly spelled out in the bid card and the written sales contract. As set forth above, plaintiffs, through their bids, specifically acknowledged and warranted that they had read these documents and agreed to be bound by them. Plaintiffs' argument also ignores the undisputed evidence that, prior to the auction, the auctioneer announced that any successful bidder would be required to sign the written sales contract.

Plaintiffs also rely on a listing agreement and certain communications among the defendants tending to indicate that the auction was meant to be absolute. In our view, however, these items do not undermine the clear and unambiguous agreement by plaintiffs to be bound by the terms and conditions set forth in the bid card and the written sales contract. *See Pitchfork Ranch Co.*, 615 P.2d at 548–49.

Under these circumstances, we agree with the trial court that there was no genuine issue of material fact that the auction was conducted pursuant to the terms and conditions set forth in the bid card and the written sales contract and that the parties' rights were governed by those documents. *See Lawrence Paper Co.*, 939 F.2d at 379; *see also Milwaukee Stove & Furnace Supply Co. v. Apex Heating & Cooling, Inc.*, 142 Wis.2d 151, 418 N.W.2d 4, 7 (Ct.App.1987)(a sale bill advertising that an auction is "absolute" is not necessarily binding on the prospective seller, if prior to the sale there are announced conditions attached to the sale).

## II. Lack of Consideration

■ Plaintiffs also contend that the written sales contract was not supported by consideration and, therefore, did not govern. However, because plaintiffs failed to raise this argument in the trial court, they are precluded from doing so on appeal. *See*

*First Interstate Bank v. Cent. Bank & Trust Co.*, 937 P.2d 855, 858 (Colo.App.1996)(arguments not presented to, considered, or ruled upon by a trial court may not be raised for the first time on appeal).

The judgment is affirmed.

KAPELKE and NIETO, JJ., concur.