Baumann and others vs. Lupinski and husband.

---

BAUMANN, Executor, and others, Respondents, vs. LUPINSKI
and husband, Appellants.

*December 7, 1900 — January 8, 1901.*

Deeds: Reformation: Fraud: Omission of reservations: Evidence.

1. Solemnly executed instruments are not to be set aside or reformed
except upon evidence sufficient to establish mistake or fraud so
clearly as to leave no substantial doubt.

2. A finding of the trial court that an absolute conveyance of land by
a person since deceased to one of her daughters was obtained by
fraud of the grantee, and that it should be reformed so as to im-
pose upon it a reservation of the payment of certain sums to other
daughters, is *held* to be unsupported by the evidence (stated in
the opinion), which fully establishes the intentional execution of
the deed without reservation or condition.

3. Declarations consistent with a mere promise on the part of the
grantee that certain sums shall be paid are of themselves, alone,
insufficient to establish that a reservation or condition was in-
tended to be incorporated in a deed.

APPEAL from a judgment of the circuit court for Milwau-
kee county: D. H. JOHNSON, Circuit Judge. *Reversed.*

Baumann and others vs. Lupinski and husband.

Plaintiffs, being executor and three daughters of Johanna Hoyer, brought this action to set aside, for fraud, a deed of February 3, 1896, from her to defendant *Emilie Lupinski* (another daughter) of the house and lot constituting the homestead of Mrs. Hoyer. The court found that *Emilie Lupinski*, enjoying the confidence of her mother, sent for a notary, and, without the knowledge of her mother, caused a deed to be drawn by him and executed by said Johanna Hoyer, absolutely deeding the property to her (said *Emilie*), without putting into the deed certain reservations as to payments to the other daughters; that the omission of such reservations was by intentional fraud perpetrated by said defendant *Emilie* upon her mother, who had no knowledge of the omission. Accordingly judgment was entered reforming said deed so as to impose upon the conveyance a reservation of the payment of certain sums. From that judgment defendants appeal.

For the appellants there was a brief by *Fiebing & Killilea*, and oral argument by *O. J. Fiebing*.

*M. N. Lando*, for the respondents.

DODGE, J. It appeared by uncontradicted testimony or without dispute that Johanna Hoyer, having five daughters (four by her first marriage, and defendant *Emilie Lupinski* by a second), in 1893 made a will whereby she gave to the three plaintiffs certain sums of money, which, together with advances, made up the sum of $2,000 to each of them, and that she had previously advanced to the fourth daughter of the first marriage $2,000. By the same will she gave all her property, real and personal, except life insurance, to her daughter *Emilie*, charged with the payment of these sums to her half-sisters, which aggregated $2,000, viz.: $1,000 to *Mrs. Gallun*, $900 to *Mrs. Puls*, $100 to *Mrs. Baumann*. In the latter part of January, 1896, the plaintiff *Louis Baumann*, husband of Mrs. Hoyer's daughter *Emma Baumann*,

suggested to *Emilie* that a deed of the real estate be made
to her, in order to avoid the necessity of probating the will,
and later learned from *Mrs. Lupinski* that she had talked
the subject over with her mother, who assented to the idea.
They two went to find Mr. Bodenstab, a notary, to give in-
structions for drawing the deed, but did not find him.   Later,
either that day or soon afterwards, *Mrs. Lupinski* sent a
messenger for him, and he came to the house of Mrs. Hoyer,
where *Mrs. Lupinski* lived, in the evening of February 3d,
and there drew the deed in question, and took the acknowl-
edgment of it.   The expressed consideration was love and
affection and one dollar.   He received all his instructions
with reference thereto from Mrs. Hoyer.   She asked whether
such a deed would hold good, and he expressed his opinion
in the affirmative.   He asked her whether there were any
conditions or anything of that kind to be made,— whether
anything was to be paid to anybody else on account of the
deed,— and she told him no; that she desired *Emilie* to be-
come the owner of the entire property, so that nobody else
could make any claim against her; and that nothing was
to be paid by her (*Emilie*), by reason of that deed, to any-
body,— nothing to be paid by her to the other children.
Thereupon the deed was delivered to *Emilie* in his presence.
Mrs. Hoyer further declared that *Emilie* had taken care of
her thus far, and would take care of here thereafter, and
she gave her the deed now.   *Mrs. Lupinski* gave no instruc-
tions as to the drawing of the deed, and had no talk with
the notary before his conversation with the old lady.   The
witness to the deed, a lodger in the house, who was called
in for the purpose, did not arrive until after the deed was
drawn and ready for execution.   He testified that Mrs.
Hoyer said she was satisfied now that no one else had any
hold of her property, and that now there would be no trouble
about it; that she sold it to *Mrs. Lupinski.*   Nothing was
said in his presence further than that she sold it to her,

and that none of her sisters would get any hold of her property, and that there would be no trouble now about it.

*Emilie Lupinski,* on examination under sec. 4096, S. & B. Ann. Stats., put in evidence by the plaintiffs, testified that her mother told her when she made the deed that she wanted her (*Emilie*) to have the deed for this property, and said, "I will sell the property to you, so that you will not have trouble with your brothers and sisters after a while." "She said it ought to be mine, because I always did my duty to her. I knew about the payments of certain sums to my sisters, but when my mother deeded the property to me she said I would not have to pay them any money, because they were not entitled to any."

On February 6th the deed was recorded, and the fact of its record came to the notice of some or all of the plaintiffs, though whether they learned its contents immediately is not clear. At the time of the deed Mrs. Hoyer was seventy-eight years of age, but concededly fully competent to understand and manage her own affairs. *Mrs. Lupinski* and her husband had made a home for her mother in the latter's homestead for many years, caring for her in illness, etc. There was no evidence as to what other estate Mrs. Hoyer had, except that defendant *Max Lupinski* owed her $3,000 for money previously loaned to him.

Opposed to the facts thus established without dispute was the testimony of the plaintiff *Louis Baumann* that, when he spoke to *Mrs. Lupinski* about the advisability of making a deed in lieu of the will, his understanding was that it ought to include the clause requiring the giving of the money to the sisters as in the will. As to whether he actually spoke of this his testimony is somewhat indefinite. When asked what directions were to be given to the notary by him and *Mrs. Lupinski,* he testifies: "I wanted to make a deed with a clause put in that *Mrs. Lupinski* had to pay to her sisters *Louisa Gallun* $1,000, and $900 to *Mrs. Puls,*

and $100 to *Mrs. Baumann.* I gave her that advice." He was informed by *Mrs. Lupinski* a few weeks after the deed was made that no such reservation was contained in it, because her mother did not think it was necessary. It is, however, nowhere testified that any conversation was had with the grantor, Mrs. Hoyer, on the subject of the deed or any intended reservation therein. *Mrs. Baumann* testifies that a few days before her mother's death her mother told her that "everything was in shape, and *Emilie* knows everything about it, and she would pay us." *Mrs. Gallun* also testified: "Since that deed was made I often had conversations with my sister, always in mother's house and in her presence, after the deed was made. When I came there *Mrs. Lupinski* said, 'You know I have to pay all the money I owe you.' And mother said the same. She said we need not be afraid we would not get the money; she would pay it." "We did not quarrel about the deed, because mother said she had the deed and she would pay us." "She always promised to pay us, and always said she would pay us. We were satisfied as things were, because we did not know any other way. We thought we would get the money." There was other testimony tending to the effect that *Mrs. Lupinski* advised against troubling the mother in her last days, saying she would pay whatever she owed.

In the light of this evidence, we are constrained to the conclusion that the finding of the trial court is wholly unsupported by any evidence or legitimate inference from the evidence. The intentional execution of the deed, absolute in form, is fully established by the evidence of disinterested witnesses, of whose credibility no doubt is suggested by anything in the record. But were this otherwise, and the deed unsupported by such express evidence, according to the rule of many authorities it could not be reformed upon the evidence offered by plaintiffs, which contains not even an intimation from the lips of Mrs. Hoyer that she did not

Baumann and others vs. Lupinski and husband.

intend to execute the deed in the form in which it appears. Solemnly executed instruments are not to be set aside or reformed except upon evidence sufficient to establish mistake or fraud so clearly as to leave no substantial doubt. *Kercheval v. Doty,* 31 Wis. 476; *Fillingham v. Nichols, ante,* p. 49, and cases cited. The utmost effect of any of the testimony is that *Mr. Baumann* suggested to *Mrs. Lupinski* a deed containing these reservations, and that *Mrs. Lupinski* had received this deed with some understanding or agreement on her part to pay the various sums to her sisters, aggregating $2,000,— an understanding that may, perhaps, be easily enforceable against her; for there is no showing that Mrs. Hoyer did not leave, besides this homestead, abundant estate which by the terms of the will was to pass to *Mrs. Lupinski* charged with the duty on her part to pay her three sisters the sums mentioned. Indeed, affirmative evidence drawn out by plaintiffs tends to establish existence of a recognized debt, the property of the estate, more than sufficient to accomplish this result. Declarations consistent with a mere promise on the part of the grantee that certain sums shall be paid are of themselves, alone, insufficient to establish that a reservation or condition to such effect was intended to have been incorporated in a deed. Further than this the evidence does not go. The finding recited in the statement of facts is therefore not only contrary to the clear preponderance of the evidence, but wholly without evidence to support it.

*By the Court.*— Judgment reversed, and cause remanded with directions to enter judgment dismissing the complaint.

BARDEEN, J., took no part.