Larry A. WYNHOFF, Plaintiff,

v.

Gary S. VOGT, Veronica Vogt, and The Vogt Family Limited Partnership, Defendants-Third-Party Plaintiffs-Appellants,

v.

George WYNHOFF, Third-Party Defendant-Respondent.†

Court of Appeals

*No. 99–0103. Submitted on briefs November 19, 1999.—Decided February 16, 2000.*

2000 WI App 57

(Also reported in 608 N.W.2d 400.)

673

On behalf of the defendants-third-party plaintiffs-appellants, the cause was submitted on the briefs of *John A. Busch* and *Gordon P. Giampietro* of *Michael, Best & Friedrich LLP* of Milwaukee.

On behalf of the third-party defendant-respondent, the cause was submitted on the brief of *Christopher Lowe* of *Lowe Law Offices, S.C.* of Milwaukee.

Before Brown, P.J., Nettesheim and Snyder, JJ.

¶ 1. SNYDER, J. Gary S. Vogt, Veronica Vogt and the Vogt Family Limited Partnership (the Vogts) appeal from a judgment determining that property deeded to Gary on January 18, 1974, should be retitled in favor of his stepfather and third-party defendant, George Wynhoff. The Vogts contend that the circuit court sitting in equity did not have the authority to reform the 1974 deed because it was valid and unambiguous on its own terms. Larry Wynhoff responds that the court properly exercised its discretion in retitling the property based on the intent of George and his wife Dorothy to have Larry and Gary share an equal interest in the property.

675

¶ 2.  Although we are cognizant of the circuit court's broad power in granting equitable relief, we also recognize that equity must follow the law. In this case, the court did not have the authority to fashion the remedy it created. The circuit court exceeded the limits of its equitable powers by functionally introducing a new cause of action which had not been pled or noticed to the Vogts. In addition, equity did not permit the court to consider conditions and reservations that were never expressed in a valid and unambiguous deed, much less cancel the deed itself. We therefore reverse the court's judgment retitling Gary's property.

## BACKGROUND

¶ 3.  On February 11, 1997, Larry, the step-brother of Gary and natural son of George,[1] filed a foreclosure action against the Vogts claiming that Gary had failed to make payment on a note and mortgage allegedly executed by Gary in favor of George on January 18, 1974. According to Larry, the note memorialized Gary's promise to pay a principal sum of $139,000 plus interest, and final payment was due on January 18, 1994. The note was secured by fifty-six acres of land in Menomonee Falls (Menomonee Falls property)—the same property that was deeded to Gary on January 18, 1974. Larry alleged that on September 2, 1975, a warranty deed was recorded showing that Gary had transferred one acre of the Menomonee Falls property to Dale and Patricia Kuhlman. Larry claimed that on January 18, 1977, George assigned the note and mortgage to him by written agreement, which was later recorded on December 27, 1995. Larry sought to

---

[1] Larry is the stepson of Dorothy Wynhoff, who was the natural mother of Gary. She passed away in 1998.

have Gary pay him the principal and interest from the note, which totaled over $400,000.

¶ 4.  The Vogts denied Larry's claim and filed a motion for summary judgment, contending that the note and mortgage forming the basis of Larry's complaint could not have been executed on January 18, 1974. The court denied their motion.

¶ 5.  The Vogts then filed a third-party complaint against George. They alleged that on January 18, 1974, Gary received title to the Menomonee Falls property by quitclaim deed executed by Grace Kimball, a neighbor of George and Dorothy, for consideration of one dollar. The Vogts asserted that the transaction was actually a gift from George. They also contended that Gary had not entered into the January 18, 1974 note and mortgage. The Vogts ultimately sought indemnification from George for any relief awarded to Larry.

¶ 6.  A bench trial was held from October 6 through 8, 1998. In its oral decision, the court determined that Larry had failed to prove that the January 18, 1974 note and mortgage were valid and enforceable.[2] The court, however, also ruled that the Vogts' title[3] to the Menomonee Falls property was invalid because "there was no intention on the part of [George] Wynhoff to have that property be exclusively under the control and dominion of [Gary]." The court then retitled the property in George's name. The Vogts appeal from the court's judgment dated November 25, 1998.

[2] Larry does not appeal this portion of the court's judgment.

[3] On July 11, 1995, Gary executed a quitclaim deed transferring the Menomonee Falls property to the Vogt Family Limited Partnership.

## DISCUSSION

¶ 7.  The Vogts raise several arguments on appeal. First, they contend that George should have been found incompetent to offer testimony regarding his alleged transactions with Grace Kimball under Wisconsin's dead man's statute, WIS. STAT. § 885.16 (1997–98).[4] They also assert that the evidence established that Gary has held title to and exercised dominion and control over the Menomonee Falls property since 1974. Further, and more fundamentally, they argue that the circuit court lacked the authority to reform the quitclaim deed from Kimball to Gary. We are persuaded by this final argument, and thus we need not address Gary's evidentiary issues.

¶ 8.  We begin by taking a closer look at the circuit court's oral decision. The court initially explained that the transactions resulting in Gary's title to the Menomonee Falls property involved "wheeling and dealing and gifting and avoiding the ramifications of taxes." Because of the questionable nature of Gary's acquisition of the property, the court looked beyond the quitclaim deed itself, although the court did not find any defects in the deed. The court found compelling the "intent stated in . . . the letter of [Dorothy] Wynhoff to Gary . . . to gift to the two respective families that is, [Larry's] and [Gary's] family equally."

¶ 9.  The court found there to be a "scheme of gifting" wherein George and Dorothy Wynhoff desired not to give up control over the subject of their gifts. The court was persuaded that George had exercised "considerable dominion" over the Menomonee Falls property, as evidenced by his participation in the one-

---

[4] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

acre sale to the Kuhlmans and his handling of property located on Vliet Street in Milwaukee. The court stated, "[T]he total picture the court comes with incorporating both Menomonee Falls and Vliet Street property in terms of taking control of the rental income, making decisions as apparently to do remodeling, the length of leases and so on, again seem to remain with [George] Wynhoff."

¶ 10. While ultimately finding that Larry had failed to meet his burden of proving that the note and mortgage and assignment of the note and mortgage were valid, the court also determined that Gary's acquisition of the Menomonee Falls property was a gift that "came with strings." According to the court, there was some "ambiguity . . . at the time that the quitclaim deed was urged upon Grace Kimball." The court found that George wanted to retain an interest in the property on behalf of Larry but that it was not to the extent that Larry claimed ($139,000 plus interest).

¶ 11. The court then considered Wisconsin's statute of frauds, WIS. STAT. § 706.02, and in particular paragraph (1)(c), which requires a real estate transaction to be evidenced by a conveyance that "[i]dentifies the interest conveyed, and any material term, condition, reservation, exception or contingency upon which the interest is to arise, continue or be extinguished, limited or encumbered." The court stated that it believed there were "lots of contingencies and reservations that were not listed on any of [the] documents."

¶ 12. The court then proceeded to WIS. STAT. § 706.04, the equitable relief section of WIS. STAT. ch. 706, which states:

> A transaction which does not satisfy one or more of the requirements of s. 706.02 may be enforceable in whole or in part under doctrines of

equity, provided all of the elements of the transaction are clearly and satisfactorily proved and, in addition:

**(1)** The deficiency of the conveyance may be supplied by reformation in equity . . . .

Exercising its power to fashion an equitable remedy, the court concluded that just as George did not intend to create the note and mortgage upon which Larry had sued, George had no desire for the property to "be exclusively under the control and dominion of [Gary]." The court further stated that because Dorothy and George Wynhoff intended to share equally between Larry's and Gary's families, the

> only way I can see that intention . . . carried out is that likewise the title that [Gary] has in the property is clouded by the absence of the reservations . . . . I am satisfied the equitable relief is to in effect retitle the property in the sole name of George Wynhoff because of those irregularities.

## Standard of Review

■

¶ 13.    In canceling the 1974 quitclaim deed, the circuit court exercised its equitable powers under WIS. STAT. § 706.04. "The basis of all equitable rules is the principle of discretionary application." *Mulder v. Mittelstadt*, 120 Wis. 2d 103, 115, 352 N.W.2d 223 (Ct. App. 1984) (quoting *Yuba Consol. Gold Fields v. Kilkeary*, 206 F.2d 884, 889 (9th Cir. 1953)). We apply the erroneous exercise of discretion standard in reviewing decisions in equity. *See Lueck's Home Improvement, Inc. v. Seal Tite Nat'l, Inc.*, 142 Wis. 2d 843, 847, 419 N.W.2d 340 (Ct. App. 1987). Discretionary acts are upheld if the circuit court "examined the

relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982). We will sustain the court's findings of fact unless they are clearly erroneous. *See* WIS. STAT. § 805.17(2).

## Analysis

¶ 14.   At the outset, we point out that neither the circuit court nor any party has contended that the 1974 deed was deficient or ambiguous in its own right. Our review of the deed indicates that it clearly provided for transfer of the title to the Menomonee Falls property from Grace Kimball to Gary. The document was properly signed, delivered and recorded.

¶ 15.   When the circuit court learned that George and Dorothy Wynhoff had no intention of Gary acquiring the Menomonee Falls property outright, it resorted to WIS. STAT. §§ 706.02 and 706.04 in creating an equitable remedy. The court said that it was directed to the § 706.04 equitable relief provision by the Vogts. However, neither the Vogts nor any other party requested cancellation of the deed and retitling of the property.

¶ 16.   The court stated that it believed there were contingencies and reservations in the deed that were not listed in any of the documents. Under WIS. STAT. § 706.02(1)(c), a real estate conveyance must identify "any material term, condition, reservation . . . upon which the interest is to arise, continue or be extinguished, limited or encumbered." Because the 1974 deed did not contain any such condition, the court read George's reservations into the deed apparently by way of "reformation in equity" pursuant to WIS. STAT. § 706.04(1). This provision, however, also speaks to

681

"the deficiency of the conveyance" and the failure to satisfy one or more of the § 706.02 requirements. No party contended that the deed was deficient, ambiguous or fraudulent, and the court does not explain why the omission of a reservation rendered the deed invalid. Moreover, what the court did here was not "reformation" pursuant to § 706.04, but cancellation. The court invalidated a written and recorded real estate agreement based upon the subsequent expressed intent of an individual, George, who was not even a party to the transaction.

¶ 17.   The court's granting of equitable relief conflicts with fundamental tenets of property law. First and foremost, we note that although a court sitting in equity enjoys the "power to enlarge the scope of the ordinary forms of relief, and even to contrive new ones adapted to new circumstances," *Mulder*, 120 Wis. 2d at 115 (citations omitted), it must nonetheless follow the law, *see Kurowski v. Retail Hardware Mutual Fire Insurance Co.*, 203 Wis. 644, 647, 234 N.W. 900 (1931). Wisconsin law has made clear that if a party wants to retain an interest in property, it must expressly do so in the document of conveyance. *See Baraboo Nat'l Bank v. State*, 199 Wis. 2d 153, 160, 544 N.W.2d 909 (Ct. App. 1996). In addition, "once the deed takes effect as of date of delivery, subsequent conduct or remarks of the grantor cannot operate retroactively to change such effect. . . . '[A]s a matter of law there cannot be a conditional delivery of a deed to a grantee; in such a case the delivery becomes absolute.' " *Ritchie v. Davis*, 26 Wis. 2d 636, 644, 133 N.W.2d 312 (1965) (quoting *George Williams College v. Village of Williams Bay*, 242 Wis. 311, 320, 7 N.W.2d 891 (1943)). Here, George failed to include any reservations in the 1974 deed; therefore,

once the deed was delivered, his undocumented intentions were of little consequence.

¶ 18. Our supreme court has also aptly pointed out that "[a] deed, like any instrument, should not be rewritten by the court. If the court could rewrite or invalidate private contractual agreements, it would destroy the certainty upon which contracting parties are entitled to rely." *Stoesser v. Shore Drive Partnership*, 172 Wis. 2d 660, 670, 494 N.W.2d 204 (1993). In the present case, the circuit court's decision undermines the certainty of legitimate real estate transactions.

¶ 19. Wisconsin case law further recognizes that deeds and other

[s]olemnly executed instruments are not to be set aside or reformed except upon evidence sufficient to establish mistake or fraud so clearly as to leave no substantial doubt. . . . [A] mere promise on the part of the grantee that certain sums shall be paid are of themselves, alone, insufficient to establish that a reservation or condition to such effect was intended to have been incorporated in a deed.

*Baumann v. Lupinski*, 108 Wis. 451, 456, 84 N.W. 836 (1901) (citation omitted). Similarly, in the present case, although George wanted to retain a controlling interest in the Menomonee Falls property, not even a promise by Gary to permit such a reservation would have preserved George's interest.

¶ 20. In an early case, *Mills v. The Evansville Seminary*, 47 Wis. 354, 362, 2 N.W. 550 (1879), our supreme court addressed whether a court in equity had the authority to reform a deed that was "absolute in terms" but that did not reflect the intent of the grantor.

There, Mills claimed that when he deeded property to the Evansville Seminary, he did so as a grant upon the condition that the property be used only for a seminary, and that if the land no longer was utilized for such a purpose, it would revert back to him. However, no such condition was set forth in the deed. Mills wanted to reform the deed to make it express what he considered to be the actual intention and understanding of the parties. Because the land was no longer being used for a seminary, he wanted the court to declare a forfeiture of the property. The supreme court declined, holding that a court of equity could not exercise its jurisdiction to reform a perfectly valid deed. *See id.*

■

¶ 21. Similarly, the circuit court here did not have the authority to cancel a deed that was not only statutorily sufficient, but one whose validity was not challenged by any of the parties. Wisconsin law is plain that once a deed or similar instrument has been properly executed and recorded, a court may not alter the document—aside from fraud or mistake—when a party later expresses a different intent than what was memorialized. In George's case, he was awarded title to the Menomonee Falls property in the face of a valid deed held by Gary and despite the fact that George was not a party to the transaction. We are convinced that the circuit court exceeded its discretion in retitling the property. Therefore, we reverse the court's judgment and remand with directions to award all rights, title and interest in the property to the Vogts.

¶ 22. Costs are denied to all parties.

*By the Court.*—Judgment reversed and cause remanded with directions.