MILWAUKEE STOVE & FURNACE SUPPLY CO.,
Plaintiff-Respondent,

v.

APEX HEATING & COOLING, INC., Defendant,

George WOODRICH, d/b/a Woodrich Real Estate,
Garnishee-Defendant,

DEFFNER LAW FIRM, S.C., Garnishee-Defendant-
Appellant.

Court of Appeals

*No. 87–0929. Submitted on briefs September 30, 1987.—Decided
November 3, 1987.*

(Also reported in 418 N.W.2d 4.)

For garnishee-defendant-appellant there were briefs by *Roger L. Deffner,* of Wausau.

For plaintiff-respondent there were briefs by *Mark A. Seidl, S.C.,* of Wausau.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Garnishee, Deffner Law Firm, S.C., appeals a summary judgment awarding Milwaukee Stove & Furnace Supply Co. certain funds representing the net proceeds of an auction sale, including funds derived from the sale of property not yet put up for bids at the time of service of the garnishee summons. We conclude that the funds representing the property not yet put up for bids at the time of service were not subject to Milwaukee Stove's garnishment. We further conclude that the proceeds realized prior to Milwaukee Stove's service were entirely subject to secured debts. Accordingly, there was no liability to Milwaukee Stove on the part of the garnishees. We therefore reverse and remand with

directions to enter judgment in favor of the garnishees dismissing the action.

The material facts are undisputed. Apex Heating & Cooling, Inc., intended to liquidate its complete inventory of shop equipment and materials. Apex thereby contracted with George Woodrich, d/b/a Woodrich Real Estate & Auctions, to conduct an auction at Apex' place of business. The contract provided for 1,000 sale bills to be printed and distributed jointly by Woodrich and Apex. The sale bills advertised that the auction would be an "absolute auction of all shop equipment and inventory," and that the property was to be sold "without reserve." The auction contract also provided for certain remedies in the event Apex cancelled the contract or held a sale varying from the contract.

During the course of the auction, Milwaukee Stove served a garnishee summons and complaint on Woodrich, pursuant to a previously obtained default judgment against Apex. Deffner Law Firm, S.C., was also served with a garnishee summons. Upon being served with Milwaukee Stove's garnishment, Woodrich immediately drew a line on the clerk's sales records indicating the property that had been put up for bids to that point. Prior to Milwaukee Stove's service, the auction had produced $16,189.50. Woodrich then continued with the auction. Shortly after service by Milwaukee Stove, the Internal Revenue Service twice served notices of levy on tax liens. At the time of each service, Woodrich again drew a line on the sales records indicating the property that had at that point been put on the auction block. At the time of the first IRS levy, an additional $1,100 had been "struck off." At the time of the second IRS levy, an additional $2,015 had been "struck off."

The garnishees argued to the trial court that the funds representing the property not yet put up for bids at the time of Milwaukee Stove's service were beyond the reach of the garnishment process. Milwaukee Stove, on the other hand, argued that pursuant to sec. 812.01(1) it obtained an interest both in the cash receipts up to the time of its service as well as the funds representing property remaining to be sold at that time. The parties filed opposing motions for summary judgment. The trial court granted summary judgment in favor of Milwaukee Stove. The court held that Woodrich had possession or control of both the cash receipts and the property remaining to be sold, such that the entire proceeds of the auction were subject to Milwaukee Stove's garnishment.

The resolution of this dispute requires an interpretation of sec. 812.01(1). The interpretation of a statute is a question of law that we review independently on appeal. *DeMars v. LaPour,* 123 Wis. 2d 366, 370, 366 N.W.2d 891, 893 (1985). When reviewing a summary judgment, we apply the standards set forth in sec. 802.08, Stats., in the same manner as the trial court. *Preloznik v. City of Madison,* 113 Wis. 2d 112, 115–16, 334 N.W.2d 580, 582–83 (Ct. App. 1983).

■

We begin the analysis by examining the statutory language itself. The general rule is that garnishment statutes must be strictly construed and that, absent statutory authority, garnishment will not lie since garnishment is in derogation of the common law. *See Mahrle v. Engle,* 261 Wis. 485, 488, 53 N.W.2d 176, 178 (1952). Section 812.01(1) provides in part:

**Garnishment; definitions, procedure, exceptions.** (1) Any creditor may proceed against

any person who is indebted to or has any property in his or her possession or under his or her control belonging to such creditor's debtor ....

The initial question presented is whether property not yet put on the auction block at the point of Milwaukee Stove's service was nevertheless in the possession or control of Woodrich such that Milwaukee Stove could proceed against the funds representing that property.

Milwaukee Stove argues that Woodrich had possession and control over the property not yet put up for bids because the sale was advertised as an absolute auction "without reserve." According to Milwaukee Stove, advertising the sale "without reserve" prohibited Apex from withdrawing any item from sale. The terms of the auction necessitated absolute liquidation. Apex therefore relinquished control of the property to Woodrich in order to effectuate the disposal of its entire inventory.

We disagree. "Without reserve" is a term of art assuring prospective bidders that once an article or lot is put up for bids, that article or lot cannot be withdrawn regardless of how low the highest bid may be. *Zuhak v. Rose,* 264 Wis. 286, 291–92, 58 N.W.2d 693, 696 (1953); *see also* 7A C.J.S. *Auctions & Auctioneers,* sec. 11, at 868–69 (1980); 7 Am. Jur. 2d *Auctions and Auctioneers,* sec. 17, at 376–77 (1980).

Section 402.328(1) and (3), Stats. (adopting U.C.C. secs. 2–328(1) and (3)) states in part:

**Sale by auction.** (1)   In a sale by auction if goods are put up in lots each lot is the subject of a separate sale.

. . . .

(3) Such a sale is with reserve unless the goods are in explicit terms put up without reserve. ... *In an auction without reserve, after the auctioneer calls for bids on an article or lot, that article or lot cannot be withdrawn unless no bid is made within a reasonable time.* (Emphasis added.)[1]

*See also* Official Comment to U.C.C., sec. 2–328, at 134, which provides in part:

2. An auction "with reserve" is the normal procedure. The crucial point, however, for determining the nature of an auction is the "putting up" of the goods. This Article accepts the view that the goods may be withdrawn before they are actually "put up," regardless of whether the auction is advertised as one without reserve, ....

Accordingly, the seller may cancel the auction, modify the terms of the auction, or withdraw goods before they are actually put up for sale, regardless of whether the auction is advertised as a sale with or without reserve. As the Restatement of Contracts illustrates:

---

[1]In auctions "with reserve," the bidder is the party making the offer. The seller may either accept or reject the bid. At any time before the hammer falls, if the bidders are too low, the seller may withdraw the property. In an auction "without reserve," however, the seller promises to sell the property to the highest bidder. Before the auctioneer calls for bids, the seller has the power to withdraw the property from sale. However, once the auctioneer calls for bids, the seller is under a legal duty to sell the property to the highest bidder. For a discussion regarding the law of auctions and auctioneers and, in particular, sales with or without reserve, *see, e.g.,* 1 Corbin on Contracts, sec. 108, at 480–85 (1963); 1 S. Williston, A Treatise on the Law of Contracts, sec. 29, at 76–80 (3d ed. 1957).

4. A advertises a sale of his household furniture without reserve. An article is put up for sale at the auction and B is the highest bona fide bidder; but A, dissatisfied with the bidding, either accepts a higher fictitious bid from an agent employed for the purpose, or openly withdraws the article from sale. He also withdraws all the rest of the furniture from the sale. In either case A is bound by contract to B to sell to him the article on which he was the highest bona fide bidder, but neither B nor the others at the auction have legal ground for complaint that the remainder of the furniture not yet actually put up for sale is withdrawn from sale.

Restatement of Contracts, sec. 27, illustration 4, at 35–36 (1932); *see also* Annotation, *Withdrawal of property before bids,* 37 A.L.R.2d, sec. 6, at 1055–56 (1954).

■

Furthermore, a sale bill advertising an "absolute auction" is not binding on the prospective seller. Rather, an advertisement that a person will liquidate his property at public auction is a mere declaration of intention that in no way affects his legal relations. *See* 7 Am. Jur. 2d, *supra,* p. 6, sec. 16, at 374–75; Restatement, *supra,* p. 7, illustration 1; *see also Jones v. Hackensack Auto Wreck., Inc.,* 11 A.2d 595 (N.J. 1940).

■

We conclude, therefore, that advertising the sale as an absolute auction "without reserve" did not prohibit Apex from withdrawing the property from the sale before it was put up for bidding. Apex thus did not relinquish possession or control of the property

not yet put up for bids at the time of Milwaukee Stove's service.

Milwaukee Stove next argues that the damage clause provided by the auction contract demonstrates Woodrich's control of the property. Milwaukee Stove suggests that the terms of the auction contract required Apex to absolutely liquidate its entire line of shop equipment and material on the prescribed date. Therefore, by contract, Apex could neither cancel the auction nor withdraw any items from sale.

This argument is contrary to basic contract law regarding remedies for the breach of a contract by the person who has contracted to have services rendered. The auction contract does not prohibit the cancellation of the auction nor contemplate the possession of the property in the event of breach, but merely provides for the auctioneer to seek damages in the event of such a breach.

Finally, Milwaukee Stove asserts that the various duties Woodrich performed in furtherance of its clerking function demonstrate possession or control of the items not yet put on the auction block. For example, Milwaukee Stove perceives the marking of the property and the determination of the order in which the property was to be sold as manifesting Woodrich's control. We conclude otherwise.

The garnishment statute is designed to impose liability on persons who maintain actual possession or control of property, not on persons who perform some act in relation to that property. *Skalecki v. Frederick,* 31 Wis. 2d 496, 504, 143 N.W.2d 520, 524 (1966). Here, Woodrich did not maintain actual possession or control of the property not yet put up for bids. In the

performance of its clerking function, Woodrich merely performed an act in relation to the property intended to be sold. The property remained in Apex' possession and control until put up for bids. Consequently, the property not yet put up for bids was not in the possession or control of Woodrich within the meaning of sec. 812.01(1).

We turn now to the issue concerning whether Milwaukee Stove had an interest in the funds representing the property sold prior to Milwaukee Stove's service. It is uncontroverted that at the moment the garnishment papers were served, the gross proceeds of the auction amounted to $16,189.50, subject to Woodrich's commissions totaling $2,119, leaving a net balance of funds in the hands of Woodrich in the amount of $14,070.50. Woodrich paid directly to the principal secured creditor the sum of $9,672.20. There is no dispute as to the appropriateness of this payment. The remaining $4,398.30 was paid to Deffner Law Firm, S.C., trust account. Deffner subsequently paid the amount of $552.50 on a secured lien in favor of an individual named Al Will, and applied the remaining $3,845.80 to a secured lien in favor of Deffner Law Firm, S.C. Milwaukee Stove concedes that the distribution to Al Will was appropriate, and further that Deffner Law Firm, S.C., had a secured lien of at least $4,209.25.[2]

---

[2]Because we have determined that the funds realized after Milwaukee Stove's service were not subject to the garnishment, and since the Internal Revenue Service is not a party to this appeal, it is unnecessary for us to address the appropriateness of payments to others from funds realized after Milwaukee Stove's service.

■

Accordingly, Woodrich had no property in its possession or control belonging to Apex at the time Milwaukee Stove's garnishee summons was served. Since no amount of the funds representing property sold prior to Milwaukee Stove's service was left after the payment of the undisputed secured debts, there was no liability on the part of the garnishees to Milwaukee Stove. The garnishees are therefore entitled to judgment dismissing the action.

*By the Court.*—Judgment reversed and cause remanded with directions.