PATIENCE DRAKE ROGGENSACK, C.J.
¶ 1 We review a published decision of the court of appeals,[2] which affirmed the circuit court's[3] order entitling the Department of Revenue (DOR) to garnish land contract proceeds due to James N. Vandenberg (James) and three other tenants-in-common of real property, Sharon Kempen, Sandra Schmidt and Mark Vandenberg (collectively, the intervenors), and denying the intervenors' request to partition the real estate that is subject to the land contract.
¶ 2. Our review centers on three issues: (1) whether the DOR is entitled to garnish any portion of the final land contract payment; and, if so, (2) whether the DOR is entitled to garnish 1/4 of the final payment due on the land contract or 1/4 of the land contract's full purchase price; and (3) whether the circuit court erroneously exercised its discretion in refusing to partition the property.
¶ 3. We conclude that the DOR is entitled to garnish a portion of the final land contract payment, and the portion subject to garnishment is limited to the *394 amount that James could require be paid to him from that payment. We remand to the circuit court to make the factual determination of the amount that James has a right to receive from the final payment.
¶ 4. Finally, we conclude that the circuit court did not erroneously exercise its discretion by refusing to partition the property. Accordingly, we reverse the court of appeals in part, affirm in part and remand.
I. BACKGROUND
f 5. In 1997, James, Sharon Kempen, Sandra Schmidt and Mark Vandenberg acquired real estate located in Brown County as tenants-in-common, with each individual having an undivided 1/4 ownership interest. During the time that they owned the property, James accumulated personal debts that resulted in encumbrances being filed against the property.
¶ 6. For example, on February 16, 2004, James gave a mortgage to M&I Marshall & Ilsley Bank for a $54,100 indebtedness.[4] On January 4, 2010, DOR docketed two tax warrants totaling $112,655.24 for taxes that James owed. And on May 6, 2010, Prince Corporation (Prince) obtained a money judgment against James for $165,000. The judgment was docketed in Brown County on May 6, 2010. Finally, on June 3, 2010, the State of Wisconsin docketed a judgment against James for $100,000 in Brown County.
¶ 7. On July 14, 2011, James and the intervenors contracted to sell their property to Van De Hey Real Estate, LLC (Van De Hey) on land contract for *395 $341,700.[5] The land contract provided that Van De Hey would remit payments in the following manner: $113,900 at the execution of the contract on July 14, 2011; $113,900 on October 1, 2011; and the remaining $113,900 on April 15, 2012. The land contract also provided that James and the intervenors were obligated to deliver a warranty deed to the property, "free and clear of all liens and encumbrances" when the final payment was made.
¶ 8. Van De Hey timely made the first two payments as required by the land contract.[6] On February 17, 2012, Prince filed a non-earnings garnishment summons and complaint, seeking to garnish Van De Hey's final payment of $113,900 as partial satisfaction of its judgment against James. The intervenors moved to intervene in Prince's garnishment action, and the circuit court granted their motion on June 6, 2012. The intervenors argued that the DOR had an interest superior to Prince's interest. They also argued that garnishment was limited to James's 1/4 share of the final $113,900 payment, which was $28,475. However, on November 6, 2012, the circuit court issued an order entitling Prince to garnish 1/4 of the full contract price, or $85,425. Van De Hey did not make the final payment.
¶ 9. On November 14, 2013, the intervenors filed a third-party summons and complaint, impleading the DOR as an interested party due to its earlier filed tax *396 warrants that resulted from James's delinquent taxes.[7] They attached as exhibits to their third-party complaint copies of Prince's non-earnings garnishment complaint and the land contract for the sale of the property.
¶ 10. On December 20, 2013, the DOR answered the third-party complaint, admitting that it claimed an interest in the property because it docketed state income tax warrants against James for $64,719.47 and $47,935.77 on January 4, 2010.[8] The DOR's answer further stated that "judgment is requested in accordance with the foregoing, together with such other and further relief as is just and equitable."
¶ 11. On April 9, 2014, the intervenors moved for partition as well as reconsideration of the circuit court's November 6, 2012 order entitling Prince to garnish $85,425 from Van De Hey's final land contract payment. The intervenors argued that Prince's garnishment action should be dismissed due to the DOR's superior tax warrants and that garnishment by any party was limited to James's 1/4 outstanding share of the final payment, or $28,475. The intervenors also requested partition of the property as the only method *397 of conveying title to Van De Hey "free and clear of all liens and encumbrances" as required by the land contract.
¶ 12. On reconsideration, the circuit court concluded that it would " maintain 0 its previous holding that a valid lienholder may garnish the entirety of [James's] interest in the land sale — one-fourth of the total contract price[,] or $85,425." However, the circuit court concluded that the DOR's previously-docketed tax warrants were superior to Prince's money judgment. Therefore, the circuit court held that the DOR, rather than Prince, was entitled to garnish $85,425 from Van De Hey's final payment of $113,900.
¶ 13. With respect to the intervenors' request for partition, the circuit court acknowledged that "[a]ny person having an interest in real property" has the right to request partition. However, the circuit court denied partition because any such action would prejudice one or more persons with an interest in the property. Both Prince and the intervenors separately appealed the circuit court's order.
¶ 14. The court of appeals affirmed in all respects, holding that (1) the DOR's answer to the third-party complaint was sufficient to entitle it to garnish a portion of Van De Hey's final payment; (2) the DOR was entitled to garnish 1/4 of the full sale price of the land contract, $85,425; and (3) the circuit court did not erroneously exercise its discretion in denying partition. We granted the intervenors' petition for review.[9]
*398 II. DISCUSSION
A. Standard of Review
¶ 15. Resolution of this dispute requires us to interpret and apply Wisconsin garnishment statutes.[10] Statutory interpretation and application are questions of law that we review independently, while benefitting from the analyses of the circuit court and court of appeals. Richards v. Badger Mut. Ins. Co., 2008 WI 52, ¶ 14, 309 Wis. 2d 541, 749 N.W.2d 581; Milwaukee Stove & Furnace Supply Co. v. Apex Heating & Cooling, Inc., 142 Wis. 2d 151, 155, 418 N.W.2d 4 (Ct. App. 1987) (explaining that garnishment is a statutory remedy, requiring independent appellate review).
¶ 16. Although the common law of partition is now codified, it remains an equitable remedy. Klawitter v. Klawitter, 2001 WI App 16, ¶ 7, 240 Wis. 2d 685, 623 N.W.2d 169. Therefore, we review the circuit court's partition decision under the "highly deferential" erroneous exercise of discretion standard, which we apply to equitable remedies. Id., f 8 (applying erroneous exercise of discretion to circuit court's discretionary decision in regard to contribution during partition action); Associated Bank N.A. v. Collier, 2014 WI 62, ¶ 22, 355 Wis. 2d 343, 852 N.W.2d 443 (explaining that review of a circuit court's decision about *399 whether to employ its equitable powers applies the erroneous exercise of discretion standard).
B. General Principles of Statutory Interpretation
¶ 17. " [Statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' " State ex rel. Kalal v. Circuit Court for Dane Cnty., 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoting Seider v. O'Connell, 2000 WI 76, ¶ 43, 236 Wis. 2d 211, 612 N.W.2d 659). Plain meaning may be ascertained not only from the words employed in the statute, but also from the context. Id., ¶ 46. We interpret statutory language in the context in which those words are used; "not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results." Id.
¶ 18. "If the words chosen for the statute exhibit a 'plain, clear statutory meaning,' without ambiguity, the statute is applied according to the plain meaning of the statutory terms." State v. Grunke, 2008 WI 82, ¶ 22, 311 Wis. 2d 439, 752 N.W.2d 769 (quoting Kalal, 271 Wis. 2d 633, ¶ 46). However, where the statute is "capable of being understood by reasonably well-informed persons in two or more senses [,]" then the statute is ambiguous. Kalal, 271 Wis. 2d 633, ¶ 47. Where the language is ambiguous, we may consult extrinsic sources. Id., ¶ 50. "While extrinsic sources are usually not consulted if the statutory language bears a plain meaning, we nevertheless may consult extrinsic sources 'to confirm or verify a plain-meaning *400 interpretation.' " Grunke, 311 Wis. 2d 439, ¶ 22 (quoting Kalal, 271 Wis. 2d 633, ¶ 51).
C. Garnishment Principles
¶ 19. Garnishment is a remedy available to a creditor, the garnishor, seeking satisfaction of its debt- or's debts by garnishing property of the debtor, the defendant, that is in the hands of a third-party, the garnishee. See Mundt v. Shabow, 120 Wis. 303, 304, 97 N.W. 897 (1904); Wis. Stat. § 812.01. Garnishment is a wholly statutory remedy, requiring strict compliance. Liberty Loan Corp. & Affiliates v. Eis, 69 Wis. 2d 642, 646-47, 230 N.W.2d 617 (1975) (explaining that the statutory prerequisites for garnishment are strictly enforced); Milwaukee Stove, 142 Wis. 2d at 155 (stating that action for garnishment will not lie absent statutory authority). Therefore, "the right to commence a garnishment action must be found within the provisions of the garnishment statute[s]." Hometown Bank v. Acuity Ins., 2008 WI App 48, ¶ 8, 308 Wis. 2d 503, 748 N.W.2d 203.
¶ 20. Chapter 812, Subchapter I of the Wisconsin Statutes governs non-earnings garnishment actions. Wisconsin Stat. § 812.01(1) provides that any "creditor may commence a nonearnings garnishment [action] 'against any person who is indebted to or has any property in his or her possession or under his or her control belonging to such creditor's debtor.' " Id. (quoting Wis. Stat. § 812.01(1)). Wisconsin Stat. § 812.04(3) states that "[a] garnishment action shall be commenced by the filing of a garnishee summons and annexed complaint."
¶ 21. Pursuant to the foregoing statutes, Prince, the garnishor, commenced the instant garnishment *401 action against Van De Hey, the garnishee, having possession of land contract proceeds due to James, the debtor, by virtue of Van De Hey's obligation to make payments under the land contract. As required by Wis. Stat. § 812.04(3), Prince filed a non-earnings garnishment summons and complaint on February 17, 2012 and timely served the appropriate parties; thereafter, the garnishment action proceeded in circuit court.
¶ 22. Neither the intervenors nor Van De Hey has argued that the garnishment action was not properly commenced by Prince. Accordingly, we assume, without deciding, that Prince strictly complied with Wis. Stat. § 812.04(3), thereby properly commencing the instant garnishment action against James's right to payment from Van De Hey.
1. Impleader into already-commenced garnishment action
¶ 23. Although it is undisputed that Prince properly commenced the instant garnishment action, the intervenors argue that the DOR is not entitled to garnish any portion of Van De Hey's final payment because the DOR did not file a non-earnings garnishment summons and complaint after being impleaded into the garnishment action.
| 24. However, Wis. Stat. § 812.17 addresses im-pleading a third-party into an already-commenced garnishment action where that third-party claims an interest in the property held by the garnishee:
When the answer of the garnishee discloses that any 3rd person claims the debt or property in the garnishee's hands!,] • . . the court may order that such claimant be impleaded as a defendant in the garnishment *402 action.... Upon such service being made[,] such claimant shall be deemed a defendant in the garnishee action, and within 20 days shall answer setting forth the claimant's claim or any defense that the garnishee • might have made.
Wis. Stat. § 812.17.
¶ 25. Initially, we note that Wis. Stat. § 812.17 contemplates impleader when it is the answer of the garnishee that discloses a third-party's claim to the garnishable property. In the instant case, it was not the answer of the garnishee, Van De Hey, that disclosed the DOR's superior claim to a portion of the final payment under the land contract. Rather, upon learning of Prince's garnishment action against Van De Hey, the intervenors moved to intervene and sought to implead the DOR due to tax warrants docketed against the real estate. Accordingly, the intervenors impleaded the DOR into the already-commenced garnishment action by serving a third-party summons and complaint, to which they attached Prince's original non-earnings garnishment complaint.
¶ 26. Perhaps because they are the very parties who impleaded the DOR, the intervenors do not argue to us that the DOR is not a proper party to the already-commenced garnishment action. Although the intervenors raised this argument to the court of appeals, the court of appeals properly noted that the intervenors did not argue to the circuit court that impleader of the DOR was improper under Wis. Stat. § 812.17. As the intervenors do not raise the issue before us and did not raise the issue to the circuit court, we will not consider it. Shadley v. Lloyds of London, 2009 WI App 165, ¶ 25, 322 Wis. 2d 189, 776 N.W.2d 838 (stating that" [i]t is well-established law in Wisconsin that those issues not presented to the trial *403 court will not be considered for the first time at the appellate level." (citing State v. Gove, 148 Wis. 2d 936, 940-41, 437 N.W.2d 218 (1989); State v. Caban, 210 Wis. 2d 597, 604-05, 563 N.W.2d 501 (1997); Hopper v. City of Madison, 79 Wis. 2d 120, 137, 256 N.W.2d 139 (1977))).
¶ 27. Indeed, arguing that the DOR was not a proper party to the garnishment action would have been contrary to the intervenors having sought to implead the DOR in the first instance. Therefore, we assume, without deciding, that the DOR was properly impleaded as a party to the already-commenced garnishment action under Wis. Stat. § 812.17. However, the intervenors argue that the DOR is not entitled to garnishment because it did not file a non-earnings garnishment summons and complaint after being im-pleaded under Wis. Stat. § 812.17.
¶ 28. While a non-earnings garnishment summons and complaint are required by Wis. Stat. § 812.04(3) in order to commence a garnishment action, the plain language of Wis. Stat. § 812.17 does not require an impleaded third-party to file a summons and complaint in an already-commenced garnishment action in order to be entitled to garnish the property to which it claims an interest. We decline to impose a requirement that is plainly not required by the statute. Harris v. Kelley, 70 Wis. 2d 242, 250, 234 N.W.2d 628 (1975) (declining to rewrite statute under the guise of statutory interpretation). Rather, once a garnishment action is commenced under Wis. Stat. § 812.04(3) and the impleaded third-party files an answer setting forth its claim to the property in the garnishee's hands, the impleaded third-party begins its garnishment. Wis. Stat. § 812.17. As aptly noted by the court of appeals, *404 " [t]hat is precisely what happened in this case." Prince Corp. v. Vandenberg, 2015 WI App 55, ¶ 37, 364 Wis. 2d 457, 868 N.W.2d 599.
¶ 29. Namely, the DOR answered the third-party complaint, asserting its claim to James's ownership interest in the land contract payment based on state income tax warrants for James's delinquent taxes. Specifically, the DOR's answer stated that it "claims an interest in the Property, by virtue of the following delinquent state tax warrants which have been docketed . . . against James N. Vandenberg." The DOR's answer identified two warrants that were docketed on January 4, 2010.
¶ 30. We conclude that the DOR's answer sufficiently set forth its claim to the garnishable property at issue in the already-commenced garnishment action; namely, a portion of the final payment due under the land contract.[11] Initially, it is significant that the DOR filed its answer in response to the third-party complaint, which incorporated by reference Prince's original non-earnings garnishment complaint as well as the land contract. Prince's non-earnings garnishment complaint clearly indicates that Prince was seeking to garnish the final payment due under the land contract.
¶ 31. Furthermore, in listing its state income tax warrants in its answer, the DOR identified its interest *405 in the final payment pursuant to Wis. Stat. § 71.91(4), which provides that unpaid state income taxes "shall be a perfected lien in favor of the [DOR] upon all property and rights to property."[12] This includes both real and personal property. Wis. Stat. § 71.91(6)(a)3. Therefore, by virtue of docketing its state income tax warrants, the DOR obtained a statutory, perfected lien on James's right to payment from Van De Hey. The DOR requested judgment in the already-commenced garnishment action in accordance with the priority of its tax warrants relative to Prince's docketed money judgment. Accordingly, we conclude that the DOR's answer sufficiently set forth its claim to James's interest in a portion of Van De Hey's final land contract payment.
1 32. Consequently, we conclude that the DOR is entitled to garnish a portion of Van De Hey's final payment under Wis. Stat. § 812.17. Therefore, we must next determine the amount of the final payment that is garnishable by the DOR.
2. DOR's garnishable amount
1 33. As set forth above, the court of appeals held that the DOR was entitled to garnish 1/4 of the total land contract purchase price from the final payment *406 because James "has a property right to one-fourth of the full contract price, or $85,425." Prince, 364 Wis. 2d 457, ¶ 20. Accordingly, the court of appeals allowed the DOR to garnish $85,425 from Van De Hey's final payment of $113,900.
¶ 34. However, contrary to the court of appeals' conclusion, a garnishor is entitled to garnish only the amount that the debtor could require be paid to him from the property in the hands of the garnishee when the garnishment is served. Collier, 355 Wis. 2d 343, ¶ 32; Morawetz v. Sun Ins. Office, 96 Wis. 175, 178, 71 N.W. 109 (1897) (explaining that the garnishor steps into the shoes of the debtor and, therefore, has no better rights to property in the hands of the garnishee than the debtor could assert). Wisconsin Stat. § 812.18 provides, as is relevant to the garnishment of Van De Hey:
From the time of service upon the garnishee, the garnishee shall be liable to the creditor for the property then in the garnishee's possession or under his or her control belonging to the debtor or in which the debtor is interested to the extent of his or her right or interest therein and for all the garnishee's debts due or to become due to the debtor ....
(emphases added).
¶ 35. Moreover, well-established Wisconsin precedent provides that a garnishment action does not give the garnishor any greater rights in the property held by a third party than the debtor himself or herself possessed on the date that the garnishment action was served. Miracle Feeds, Inc. v. Attica Dairy Farm, 129 Wis. 2d 377, 380-81, 385 N.W.2d 208 (Ct. App 1986). In Miracle Feeds, a garnishment action was brought *407 against Zim's Cheese for milk checks payable to the debtor, Attica. Id. at 378-79. A bank, to which Attica also was indebted, intervened in the action, asserting that Attica had assigned its interest in the milk checks to the bank in exchange for the bank making loans to Attica and, therefore, Attica had no interest in the milk checks that could be garnished. Id. at 379-81.
¶ 36. The court of appeals agreed with the bank. Id. at 379. In explaining the nature of a garnishment action, the court of appeals said, "[i]n effect, the garnishment was 'an action by [Attica] in [Miracle's] name against the garnishee, the purpose of which is to subrogate the plaintiff to the rights of the defendant against the garnishee.' " Id. at 380-81 (quoting Commercial Inv. Trust, Inc. v. Wm. Frankfurth H. Co., 179 Wis. 21, 24, 190 N.W. 1004 (1922)). Because "Miracle merely stands in Attica's shoes," and because Attica had assigned its rights to all milk sale proceeds to the bank long before Miracle's garnishment, there was no property of the debtor (Attica) to obtain from Zim's Cheese. Id. at 381. See also Morawetz, 96 Wis. at 178 (explaining that garnishment creates an "equitable levy" on the debtor's property that is in the hands of the garnishee at the time that the garnishment action is served).
¶ 37. As set forth above, Prince commenced the instant garnishment action on February 17, 2012, at which time Van De Hey already had made two of the payments due under the land contract. The final payment had not been made and, therefore, the final payment was the only property still in Van De Hey's hands at the time that the garnishment action was served. Therefore, given the foregoing principles, the DOR is entitled to garnish only James's outstanding share of the final payment under the land contract. *408 Stated otherwise, if 1/4 of each of the first two payments has been paid to James or on his behalf, James is entitled to $28,475 of the final payment on the land contract, and that is the amount available for the DOR to garnish.[13] Wis. Stat. § 812.18; Miracle Feeds, 129 Wis. 2d at 381.
¶ 38. It is undisputed that James and the inter-venors, as tenants-in-common, each held an undivided 1/4 interest in the real estate and each held a 1/4 interest in the proceeds of the land contract; i.e., at the inception of the land contract each tenant-in-common was to have received $85,425 when the third payment of $113,900 was made. Therefore, part of the $113,900 payment that Van De Hey is holding belongs to James and part belongs to each of the intervenors as the remaining three tenants-in-common.
¶ 39. Determining the amounts payable to each tenant-in-common from the final payment due under the land contract requires factual findings about the amounts that were paid to or on behalf of James from the first two payments Van De Hey made. The third-party complaint asserts that the first two payments due to James were made to M&I Bank on James's behalf.
| 40. It is undisputed that, on February 16, 2004, M&I Bank filed a mortgage against the undivided real estate that the parties owned as tenants in common. The intervenors assert that the mortgage was security *409 for debt James incurred personally. However, the parties who responded to the third-party complaint asserted that they could not admit or deny whether James's portions of the first two payments had been paid to M&I Bank and whether the mortgage arose from debt that James personally incurred.
¶ 41. If the assertions of the intervenors prove to be factually correct, James is owed $28,475 from the final payment, and it is only $28,475 that is subject to garnishment by the DOR. See Miracle Feeds, 129 Wis. 2d at 380-81 (explaining that garnishor is entitled to garnish only the amount of the debtor's property in the hands of the garnishee when the garnishment action is served).[14] Because the amounts that were paid to James, or on his behalf, from the first two payments have not been conclusively established in the record presented to us, we conclude that a remand to the circuit court is necessary for a factual determination of those amounts.
¶ 42. We note that any other result would prejudice the intervenors by allowing the DOR to garnish a portion of Van De Hey's final payment that is not owed to James but, rather, is owed to the intervenors as the remaining three tenants-in-common. See Gray v. Rollo, 85 U.S. 629, 634 (1873) ("If a debt is due to A. and B., how can any court compel the appropriation of it to pay the indebtedness of A. to the common debtor without committing injustice toward B.?"). In sum, we conclude that the DOR is entitled to garnish only what James, *410 himself, could require be paid to him from Van De Hey's final payment. Finally, we address the interve-nors' request to partition the property.
D. Partition
¶ 43. The intervenors seek to partition the real estate. They assert that partition is the only way in which they will be able to transfer title to Van De Hey "free and clear of all liens and encumbrances" as required under the land contract. The circuit court denied their request to partition the property, as it found that partition would prejudice one or more parties with some interest in the property.
¶ 44. "Wisconsin Stat. § 842.02 codifies the common law of partition [for real property], but partition remains an equitable action. Under [Wis. Stat. § 842.02], a party 'having an interest in real property jointly or in common with others' may sue for judgment partitioning that interest. ..." O'Connell v. O'Connell, 2005 WI App 51, ¶ 8, 279 Wis. 2d 406, 694 N.W.2d 429 (internal citations omitted) (quoting Wis. Stat. § 842.02(1)). Alternatively, where physical partition of the property is impossible, "the [circuit] court may order the land sold and the proceeds of that sale divided." Id. (citing Wis. Stat. § 842.02(2)).
¶ 45. In Wisconsin, title to real estate may have two components: legal title and equitable title. Steiner v. Wis. Am. Mut. Ins. Co., 2005 WI 72, ¶ 23, 281 Wis. 2d 395, 697 N.W.2d 452. In the case now before us, the real estate was in the process of being sold on land contract. In a land contract sale, legal title to the real estate remains with the vendor until a deed *411 is given, but equitable title is transferred to the vendee at the commencement of the land contract.[15] Wonka v. Cari, 2001 WI App 274, ¶ 13, 249 Wis. 2d 23, 637 N.W.2d 92. We recognize that the vendor's interest in payments under a land contract has been characterized as an interest in personal property. Lunde v. Fischer, 22 Wis. 2d 637, 646, 126 N.W.2d 596 (1964) (in a decision pre-dating Wisconsin's enactment of marital property, we concluded that a land contract was properly included in vendor-husband's estate as personal property, even though his wife also signed the land contract).
¶ 46. However, Wis. Stat. § 842.02(1) permits a person "having an interest in real property" to sue for partition, and Wis. Stat. § 840.01 defines an "interest in real property" very broadly to include "an interest that was formerly designated legal or equitable." Accordingly, the intervenors, holding legal title, are proper parties to institute an action to partition the property.
f 47. Our review of the circuit court's partition decision is limited to whether the circuit court erroneously exercised its discretion by refusing to partition the real estate. Klawitter, 240 Wis. 2d 685, ¶ 8. Under this "highly deferential" standard of review, we must uphold the circuit court's discretionary determination as long as the circuit court "examined the relevant facts, applied a proper standard of law, and, using a *412 demonstrated rational process, reached a conclusion that a reasonable judge could reach." Id. (internal quotation marks omitted) (quoting Wynhoff v. Vogt, 2000 WI App 57, ¶ 13, 233 Wis. 2d 673, 608 N.W.2d 400); see also Associated Bank, 355 Wis. 2d 343, ¶ 22.
¶ 48. We agree with the court of appeals that the circuit court did not erroneously exercise its discretion by refusing to partition the property. First, we note that the circuit court set forth the applicable law in its order. Specifically, the circuit court stated:
While an action for partition is governed primarily by statute, partition is also equitable in nature. There is a strong presumption favoring actual partition of the property at issue over judicial sale of the property. However, a judicial sale may be appropriate when actual partition would result in prejudice to the owners.
(internal citations omitted).
¶ 49. After recognizing that its power to order partition is equitable, the circuit court went on to recite relevant facts, noting that " [t]his is not a simple partition case, because of the number of individuals with interests in the property." The circuit court identified James and the intervenors as the "owners" and Van De Hey as the purchaser of the property, having already made two payments under the land contract.[16] Additionally, the circuit court noted the numerous encumbrances on the property, and identified Prince, *413 the DOR, the State of Wisconsin, and BMO Harris Bank as having asserted interests in the real estate.
¶ 50. After correctly reciting the facts relevant to the dispute, the circuit court determined that neither physical partition of the real estate nor judicial sale of the real estate would be equitable under the circumstances because any such action would have prejudicial effects on one or more interested persons. Specifically, the circuit court concluded that physical partition would be prejudicial to Van De Hey, holding equitable title, because Van De Hey had contracted to receive the entire property for the purchase price and had made two payments in furtherance of the land contract. The circuit court said that it was possible that partition could result in Van De Hey receiving an unencumbered 3/4 of the property from the intervenors and an encumbered 1/4 of the property from James.[17] However, Van De Hey contracted to purchase the entire property "free and clear of all liens and encum *414 brances." Partition also would result in reducing the security by 3/4 for others who have encumbrances on the real estate if their encumbrances were to remain on only James's 1/4 interest rather than on the undivided interests in the property.[18] Therefore, the circuit court refused to order partition as inequitable.
¶ 51. Next, the circuit court considered, but refused to order, judicial sale of the property, concluding that it would likewise be prejudicial to Van De Hey. The circuit court properly noted that judicial sale occurs at public auction pursuant to Wis. Stat. § 842.17. Again, as Van De Hey contracted to purchase the entire property and made payments in furtherance thereof, public auction of the property would not result in Van De Hey receiving the benefit of its bargain.[19]
*415 ¶ 52. Additionally, the circuit court specifically noted and considered its ability to fashion some other remedy such as partitioning the real estate and ordering a private sale to Van De Hey "free and clear of all liens and encumbrances." See Schmit v. Klumpyan, 2003 WI App 107, ¶¶ 22, 26, 264 Wis. 2d 414, 663 N.W.2d 331 (explaining that the circuit court in a partition action is not limited to the remedies set out in the statutes so long as the remedy chosen is equitable); Heyse v. Heyse, 47 Wis. 2d 27, 37, 176 N.W.2d 316 (1970) (authorizing circuit court to order private sale if it considers such sale appropriate). However, the circuit court stated that the intervenors had not sufficiently explained how such a sale actually would occur.
¶ 53. Moreover, as properly noted by the circuit court, among Prince, the DOR, State of Wisconsin, and BMO Harris Bank, the property is encumbered by more than $400,000 of indebtedness. Therefore, Van De Hey's entire purchase price for the property, $341,700, is not enough to satisfy all of the existing encumbrances. Therefore, we are not persuaded by the intervenors' argument that partitioning or selling the property would result in James and the interve-nors being able to deliver title "free and clear of all liens and encumbrances" as required under the land contract.
¶ 54. Consequently, physical partitioning of the property, or ordering it sold to Van De Hey "free and clear of all liens and encumbrances," would affect all of the foregoing encumbrances, resulting in prejudice to those interests. It is not equitable to permit the inter-venors to unilaterally terminate the interests of lien- *416 holders, one of whom objected to partition before us.[20] Such a result would be contrary to the protections afforded to lienholders in the partition statutes. See, e.g., Wis. Stat. § 842.17.
¶ 55. Given the numerous interests noted by the circuit court and the various consequences that any partitioning action would have, we cannot conclude that no reasonable judge could have denied partition under the facts herein presented. See Heyse, 47 Wis. 2d at 37 (noting that partition statutes are "permissive and within the discretion" of the circuit court to order such remedies where appropriate). Accordingly, we conclude that the circuit court demonstrated a rational decision-making process in concluding that partition was not an appropriate remedy after setting forth the relevant facts and law. Therefore, we agree with the court of appeals' conclusion that the circuit court did not erroneously exercise its discretion by denying partition of the property based on the record then before the circuit court.
III. CONCLUSION
¶ 56. In light of the foregoing, we conclude that the DOR is entitled to garnish a portion of the final land contract payment, and the portion subject to garnishment is limited to the amount that James could *417 require be paid to him from that payment. We remand to the circuit court to make the factual determination of the amount that James has a right to receive from the final payment.
¶ 57. Finally, we conclude that the circuit court did not erroneously exercise its discretion by refusing to partition the property. Accordingly, we reverse the court of appeals in part, affirm in part and remand for further proceedings.
By the Court. — The decision of the court of appeals is reversed in part, affirmed in part and remanded.

 Prince Corp. v. Vandenberg, 2015 WI App 55, 364 Wis. 2d 457, 868 N.W.2d 599.

 The Honorable Marc A. Hammer of Brown County presided.

 BMO Harris Bank may claim a successor's interest in this mortgage.

 At the time of the land contract purchase, the sellers and the buyer knew that there were numerous encumbrances against the real estate as indicated by the title insurance policy.

 The parties agreed to indefinitely extend the time for Van De Hey's final payment, pending resolution of the issues before us.

 The intervenors' third-party complaint sought to implead BMO Harris Bank, the successor in interest of M&I Marshall & Ilsley Bank. BMO Harris Bank has not participated in this review.

 The DOR docketed an additional tax warrant against James on August 20,2012 for $45,320.67. We also note that the record contains some discrepancies regarding the exact amounts of the tax warrants that were docketed on January 4, 2010. The title insurance commitment indicates they were in the amounts of $54,064.77 and $48,953.56. The exact amounts of those warrants are not relevant to the issues that we address.

 Prince did not petition for review, and has not participated before us. It is undisputed that the DOR's tax warrants were docketed prior to Prince's money judgment. Therefore, for purposes of our review, we assume, without deciding, that the circuit court and court of appeals were correct in holding that *398 the DOR's tax warrants had priority over Prince's money judgment in regard to garnishing James's ownership interest in the final payment due under the land contract.

 Chapter 812, Subchapter I (2013-14). All further references to the Wisconsin Statutes are to the 2013-14 version unless otherwise indicated.

 Wisconsin Stat. § 812.16(1) provides, "No trial shall be had of the garnishment action until the plaintiff has judgment in the principal action." No party has asserted that § 812.16(1) required the DOR to reduce its tax warrants to judgments before it was eligible to garnish a portion of the final land contract payment. Therefore, we assume, without deciding, that § 812.16(1) does not apply under the circumstances presented by this case.

 However, " [t]he perfected lien does not give the [DOR] priority over lienholders, mortgagees, purchasers for value, judgment creditors, and pledges whose interests have been recorded before the [DOR]'s lien is recorded." Wis. Stat. § 71.91(4). It is undisputed that the DOR's tax warrants were docketed prior to Prince's money judgment and, therefore, have priority in regard to Prince. However, the tax warrants were docketed after James gave a mortgage to M&I Bank on February 16, 2014.

 It is undisputed that upon Van De Hey's payment in full of the purchase price, James and the intervenors are required to provide a "Warranty Deed in fee simple of the property, free and clear of all liens and encumbrances." Because of the significant encumbrances that exceed the final land contract payment, it is not possible to determine when James and the intervenors will be entitled to final payment.

 The court of appeals detoured into Wis. Stat. § 700.21(1), and employed it in interpreting the land contract "as a matter of law." Prince, 346 Wis. 2d 457, ¶ 20. We do not employ § 700.21(1) because determining the amount that James could require Van De Hey to pay to him is a question of fact, not a question of law.

 Equitable title gives the vendee "full rights of ownership, including the ability to sell, lease or encumber the real estate subject to the rights of the Vendor unless the contract provides to the contrary." Steiner v. Wis. Am. Mut. Ins. Co., 2005 WI 72, ¶ 23, 281 Wis. 2d 395, 697 N.W.2d 452 (internal quotation marks omitted).

 Whether courts conclude that a vendor is an "owner" of the property under consideration has depended on the statute being interpreted because the term, "own," has been used "to describe a great variety of interests, and may vary in significance according to context and subject matter." City of Milwaukee v. Greenberg, 163 Wis. 2d 28, 35, 471 N.W.2d 33 (1991) (quoting Merrill Ry. & Lighting Co. v. Merrill, 119 Wis. 249, *413 254, 96 N.W. 686 (1903)). This concern is of less importance here where "interest in real property" is so broadly defined for purposes of partition.

 As a tenant in common, James possesses an undivided interest in the entire property. Nettesheim v. S.G. New Age Prods., Inc., 2005 WI App 169, ¶ 10, 285 Wis. 2d 663, 702 N.W.2d 449 ("A tenancy in common is defined as a 'tenancy by two or more persons, in equal or unequal undivided shares, each person having an equal right to possess the whole property ....'" (quoting Black's Law Dictionary 1507 (8th ed. 2004 (emphasis added)))). Therefore, lienholders on James's interest likewise possess an undivided interest in the entire property. However, Wis. Stat. § 842.14(3) provides:
If partition is adjudged, existing liens shall not be affected or impaired, except that a lien upon an undivided interest or estate shall thereafter be a charge only on the share assigned to the party against whom it exists, which share shall be charged with its just proportion of the costs in preference to such lien.
*414 (emphases added). Consequently, partition would have the effect of reducing by 3/4 the size of property to which the liens attached if after partition only James's 1/4 interest were affected rather than the liens affecting the whole property.

 See supra n.16.

 Wisconsin Stat. § 842.17(1) provides that" [i]f the court finds that the land or any portion thereof is so situated that partition cannot be made without prejudice to the owners, and there are no tenants or lienholders, it may order the sheriff to sell the premises so situated at public auction."
The property in the instant case is subject to numerous encumbrances. Wisconsin Stat. § 842.17(2)-(3) guide circuit courts in proceeding with judicial sale when there are lien-holders who do not agree to a sale. We note that the record is devoid of any indication of whether Prince, BMO Harris, the DOR or the State of Wisconsin would or would not consent to a sale. Without this information, we cannot expect the circuit court to have proceeded with judicial sale under Wis. Stat. § 842.17 in the face of the numerous lienholders' interests in the property. Although the intervenors could have brought this requisite information to the circuit court's attention, they failed to do so.

 All lien holders have not participated before us, but DOR has participated and objected to partition because of the effect that it would have on its lien. DOR also asserted that it had had no voice in the terms of sale to Van De Hey, which terms could affect its interests. Again, we note that our review of the circuit court's partition decision is limited to the record before the circuit court, and we review it for an erroneous exercise of discretion. Klawitter v. Klawitter, 2001 WI App 16, ¶ 8, 240 Wis. 2d 685, 623 N.W.2d 169.