PER CURIAM.
¶ 1 Day Enterprises, LLC (Day) appeals an order denying its motion to reconsider the denial of a motion to surrender funds or, in the alternative, for relief from judgment pursuant to WIS. STAT. § 806.07 (2015-16).[1] Day also appeals a judgment holding Day liable, as garnishee, for $20,000 to Badgerland Overhead Door, LLC (Badgerland).
¶ 2 Regarding the denial of its motion to reconsider, Day contends that the circuit court erred by: (1) misinterpreting an asset purchase agreement between Day and Today's Overhead Door, LLC (TOD); (2) improperly assessing successor liability to Day; (3) denying Day due process; and (4) concluding that evidence of fraud on the part of TOD did not warrant relief from judgment. As to the judgment holding Day liable, as garnishee, to Badgerland, Day contends the court erred by concluding that a $20,000 credit owed by Day to TOD was property subject to garnishment. We reject Day's arguments and affirm.
BACKGROUND
¶ 3 Day is a wholly owned subsidiary of American Overhead Door, Inc.[2] (American). Jeff Day is the president and sole owner of both entities. On May 1, 2014, Day purchased the assets of TOD under an asset purchase agreement (the agreement). The agreement provided that in exchange for TOD's assets, Day would provide TOD a $20,000 credit against TOD's accounts payable to American. The agreement also specified that the only liabilities of TOD that Day would assume were to Cellcom and Bauer Printing. After the purchase, Day and American began doing business as Today's Overhead Door, and TOD ceased operations.
¶ 4 On October 17, 2014, Badgerland received and docketed a judgment of $76,780.92 against TOD for indebtedness to Badgerland incurred by TOD prior to its sale to Day. Badgerland then filed a series of non-earnings garnishment actions against garnishee defendants it believed were either indebted to or had control over property of TOD. The list of garnishee defendants included Schley Buildings, LLC (Schley) and Integrity Home Builders, Inc. (Integrity). Badgerland collected $14,846.60 from Schley and $5,859 from Integrity.
¶ 5 Day moved to intervene in Badgerland's garnishment actions, and it sought an order requiring Badgerland to surrender to Day the funds collected from Schley and Integrity. Day argued that Schley and Integrity were indebted to Day, doing business as Today's, not to TOD, and therefore the money Badgerland collected rightfully belonged to Day.
¶ 6 On September 1, 2015, the circuit court held a hearing on Day's motion to surrender funds. Jeff Day testified at the hearing that he had agreed to purchase the assets of TOD for $20,000, although he had not yet made any payment. At the conclusion of the hearing, the court found that American, of which Day is a subsidiary, had "subsumed or purchased" Schley's and Integrity's debts to TOD, and that those debts were properly garnished by Badgerland. The court therefore denied Day's motion to have Badgerland surrender the funds collected from Schley and Integrity. Day appealed the court's decision, but we dismissed the appeal as untimely.[3]
¶ 7 Based on Jeff Day's testimony at the September 1 hearing, Badgerland filed a non-earnings garnishment complaint against Day, alleging that Day was indebted to TOD-Badgerland's judgment debtor-in the amount of $20,000. Day denied that it was indebted to TOD, and so Badgerland moved the circuit court to hold Day liable as a garnishee. Day filed an objection, and it also moved the court to reconsider its denial of Day's motion to surrender funds.[4]
¶ 8 Regarding its objection to being held liable as a garnishee, Day argued that because it purchased the assets of TOD for a $20,000 credit, not a cash payment, there was no property of TOD in Day's control. Furthermore, Day argued TOD had breached its contract with Day and, under the agreement, Day should not be held liable for money owed to TOD.
¶ 9 As to its motion to reconsider, Day argued there was new evidence that TOD had engaged in fraudulent conduct and breached the agreement between Day and TOD. In addition, Day argued the circuit court should reconsider its decision not to order Badgerland to surrender its collections from Schley and Integrity "based on the law of garnishments, violation of due process to Day Enterprises and erroneous imposition of successive liability."
¶ 10 On March 3, 2017, the circuit court held a hearing on both motions, beginning with Badgerland's motion to hold Day liable as garnishee. The court took judicial notice of Jeff Day's previous testimony-that he had agreed to purchase TOD for $20,000 but never paid that sum-and also heard testimony from Travis and Angela Techlin. Travis and Angela, the former owner and bookkeeper of TOD, respectively, both testified that TOD had agreed to sell Day its assets in exchange for a $20,000 credit toward TOD's accounts payable to American, but that no credit had ever been given. The court found that this unpaid credit constituted property subject to garnishment under WIS. STAT. § 812.01 and granted Badgerland's motion to hold Day liable, as garnishee, for $20,000.
¶ 11 The circuit court then turned to Day's motion to reconsider. The court determined that any new evidence of TOD having committed a fraud against Day, regardless of merit, was irrelevant to the claims between Day and Badgerland. In addition, the court found that it had not imposed successor liability on Day by denying its motion to surrender funds, and that Day had received its due process at the September 1 hearing. Accordingly, the court denied Day's motion to reconsider. Day now appeals.
DISCUSSION
I. Motion to reconsider
¶ 12 Day first argues the circuit court erred by denying its motion to reconsider. We review a court's decision on motions for reconsideration and relief from judgment for an erroneous exercise of discretion. Koepsell's Olde Popcorn Wagons, Inc. v. Koepsell's Festival Popcorn Wagons, Ltd. , 2004 WI App 129, ¶ 6, 275 Wis. 2d 397, 685 N.W.2d 853 ; Schauer v. DeNeveu Homeowners Ass'n , 194 Wis. 2d 62, 70, 533 N.W.2d 470 (1995). First, however, we must identify the issues properly before us.
¶ 13 Day argues the circuit court erred for four reasons by denying Day's motion to reconsider. Specifically, it contends the court: (1) misinterpreted the agreement between Day and TOD; (2) improperly assessed successor liability to Day; (3) denied Day due process; and (4) erroneously concluded that evidence of fraud on the part of TOD did not entitle Day to relief from the judgment. However, the issues presented by Day's first three arguments are not properly before us because they seek to revisit the court's original order from September 2015.
¶ 14 It is well established that when no timely appeal is made from an order or judgment, an error in the order or judgment cannot be reached by an appeal from a later ruling that simply reaffirms the order or judgment. See generally Ver Hagen v. Gibbons , 55 Wis. 2d 21, 26, 197 N.W.2d 752 (1972) ; see also Kellogg-Citizens Nat'l Bank of Green Bay v. Francois , 240 Wis. 432, 435-36, 3 N.W.2d 686 (1942) ("This court has held from the earliest day that where no appeal is taken from an order (or judgment) within the time limited, mere error in an order cannot be reached by appealing from an order denying a motion to set it aside."). Day had an opportunity to appeal from the circuit court's September 1, 2015 decision, but its attempt to do so was untimely. Accordingly, Day cannot resurrect issues that we could have decided had Day timely appealed.
¶ 15 We therefore turn to the only issue properly before us-that is, Day's contention that new evidence shows TOD engaged in a scheme of fraudulent activity when Day and TOD entered into the agreement. Day contends that TOD's fraud renders the court's original order "no longer justifiable under WIS. STAT. § 806.07."
¶ 16 We are not persuaded, and conclude the circuit court properly exercised its discretion in determining that Day was not entitled to relief under WIS. STAT. § 806.07(1). As Badgerland points out, and with which Day fails to come to terms, there is no evidence Badgerland engaged in any misconduct. Section 806.07(1)(c) plainly requires that there be fraud, misrepresentation or misconduct by an "adverse party" in order for a court to grant relief from a judgment or order. The adverse party in Day's motion to surrender funds was Badgerland, not TOD. TOD's conduct was, and remains, irrelevant to whether Badgerland acted properly under the garnishment statutes. Accordingly, the circuit court did not erroneously exercise its discretion by declining to grant Day relief.
II. Garnishment of $20,000 credit
¶ 17 Day argues the circuit court erred by misinterpreting the meaning of the term "property" in WIS. STAT. § 812.01(1). Statutory interpretation presents a question of law that we review de novo. Prince Corp. v. Vandenberg , 2016 WI 49, ¶ 15, 369 Wis. 2d 387, 882 N.W.2d 371. We begin with the language of the statute; if that meaning is plain, we ordinarily stop the inquiry. Id. , ¶ 17. Plain meaning can be discerned not only from the words in the statute themselves, but also from the context in which they are used. Id. Further, we may consult extrinsic sources to confirm or verify a plain-meaning interpretation. Id. , ¶ 18.
¶ 18 The statutory provision at issue reads: "Any creditor may proceed against any person who is indebted to or has any property in his or her possession or under his or her control belonging to such creditor's debtor or which is subject to satisfaction of an obligation...." WIS. STAT. § 812.01(1) (emphasis added). Day argues that, here, the plain meaning of "property" in the statute is money, and therefore the $20,000 credit Day owed TOD was not property subject to garnishment. We disagree.
¶ 19 The word "property" is not defined in the garnishment statute. We therefore look to a recognized dictionary for the ordinary meaning of the word. See Forshee v. Neuschwander , 2018 WI 62, ¶ 23, 381 Wis. 2d 757, 914 N.W.2d 643. BLACK'S LAW DICTIONARY defines "property" as "[c]ollectively, the rights in a valued resource such as land, chattel, or an intangible." Property , BLACK'S LAW DICTIONARY 1410 (10th ed. 2014). Accepting this definition, we conclude that a contractual credit is a "valued resource," as it is an intangible for which a party may bargain to the rights. Accordingly, it is property subject to garnishment under WIS. STAT. § 812.01(1). Indeed, Day and TOD's agreement demonstrates this reality, as the parties determined that the credit value was equal to the value of TOD's assets and, accordingly, they contracted for the exchange of their respective assets.
¶ 20 In response, Day does not contend that any dictionary definition supports its position. Rather, Day points to WIS. STAT. § 812.18(3) -the statute addressing a garnishee's liability-and argues that because that statute "specifically talks about money being paid by the [g]arnishee," a credit is "not the type of property that is the subject of a garnishment." But Day cites no authority or principle of statutory interpretation supporting a conclusion that § 812.18(3)'s explanation of the liability of a garnishee limits the definition of property subject to garnishment under WIS. STAT. § 812.01(1). We will not consider further this undeveloped argument. See State v. Pettit , 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992).
¶ 21 Day raises three additional arguments. First, it contends the $20,000 credit was granted to TOD's account at the time the agreement was signed, and thus is no longer available for garnishment. Second, Day argues the credit was contingent on TOD's performance of the contract, and the circuit court improperly prevented Day from presenting evidence that TOD had breached the contract. Third, Day argues that because the credit was based on a separate contract, it was "derivative" and not subject to garnishment.
¶ 22 However, Day did not raise these arguments in the circuit court, and they are therefore forfeited. See Gemini Capital Grp., LLC v. Jones , 2017 WI App 77, ¶ 27, 378 Wis. 2d 614, 904 N.W.2d 131. Day insists there was no forfeiture because "every effort was made" to raise these issues previously, but the "court simply did not allow evidence to be taken." That assertion is contradicted by the record. The parties were given full opportunity to brief their positions before the March 3, 2017 hearing, and, at the hearing, Day was given the opportunity to call witnesses and argue its positions. Day still failed to raise these issues.
¶ 23 Even if we were to ignore the forfeiture and consider Day's arguments, they fail on the merits. First, Jeff Day-the principal of Day-and Travis and Angie Techlin-the owner and bookkeeper of TOD, respectively-all testified that the $20,000 credit had not yet been paid or applied by Day. Thus, their testimony directly contradicts Day's argument that the $20,000 credit was applied at the time the agreement was executed. Second, even if TOD breached the agreement, that breach would not affect Badgerland's rights under the garnishment statute; it would only provide a cause of action for Day to pursue against TOD. See Olen v. Phelps , 200 Wis. 2d 155, 166, 546 N.W.2d 176 (Ct. App. 1996) ("The possibility that a condition subsequent may defeat the payment of a presently owing obligation has no effect on the availability of garnishment.") (citation omitted). Finally, Day cites no authority and develops no analysis supporting its argument that the $20,000 credit was "derivative" of a separate contract and thus not subject to garnishment. Again, we will not consider undeveloped arguments. See Pettit , 171 Wis. 2d at 646.
¶ 24 For these reasons, we affirm the circuit court's order denying the motion for reconsideration and its judgment holding Day liable, as garnishee, to Badgerland for $20,000.
By the Court. -Judgment and order affirmed.
This opinion will not be published. See WIS. STAT. RULE 809.23(1)(b)5.

In the circuit court, Day filed a motion to reconsider, or, in the alternative, a motion for relief from judgment pursuant to Wis. Stat. § 806.07 (2015-16). However, on appeal Day refers to its denied motions simply as "a motion to reconsider" and its argument does not distinguish between the two motions. Accordingly, we will follow Day's lead and refer to these two motions collectively as "the motion to reconsider." All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

The appellate record refers to American as both American Overhead Door, Inc., and American Overhead Door, LLC. The status of American as a corporation or a limited liability company is irrelevant to our analysis and therefore we do not resolve this discrepancy.

See Badgerland Overhead Door, LLC v. Today's Overheard Door, LLC , No. 2016AP160, unpublished slip op. and order (WI App Apr. 6, 2016).

The motion to reconsider was filed on August 30, 2016, well after we rejected Day's appeal of the circuit court's decision at the September 2015 hearing as untimely on April 6, 2016.